**Walter Franklin GILKEY, as Special Administrator of the Estate of Dorothy Gilkey, Deceased, and Individually, Plaintiff,**

v.

**UNITED STATES, Defendant.**

Civ. A. No. 1628.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Jan. 30, 1963.

388

Chowning, McHaney, Mitchell, Hamilton & Burrow, Little Rock, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is a suit under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

The plaintiff, Walter Franklin Gilkey, as the duly appointed, qualified and acting special administrator of the estate of Dorothy Gilkey, deceased, seeks to recover from defendant, United States, damages on behalf of the estate of the deceased in the sum of $201,750.00 and also in his individual capacity for personal injuries and property damages in the sum of $203,450.00.

In his complaint, filed herein on December 29, 1961, he alleged that the court has jurisdiction of this action under the provisions of 28 U.S.C. § 1346(b).

That on February 7, 1961, at about 9:40 a. m., the plaintiff was driving his Pontiac automobile in an easterly direction on Highway 22 in Logan County, Arkansas, accompanied by his wife, the deceased, and their young daughter, Vicki Jean Gilkey, age 4.

That at that time Colonel Ernest L. McDaniel was driving an automobile in a westerly direction on said highway; that the said Colonel McDaniel was driving in a negligent and careless manner, at a high rate of speed, on the wrong side of the highway and in the traffic lane rightfully being traveled by plaintiff; that in an effort to avoid colliding with the automobile being driven by Colonel McDaniel, plaintiff was forced to drive his automobile to his right onto the shoulder of the highway; that the shoulder was covered with snow and ice, and through no fault of the plaintiff caused

his automobile to skid out of control broadside down his right side of the highway. The automobile being driven by McDaniel collided with that of plaintiff with great force and violence, causing the death of the deceased and injuries and damages to plaintiff.

At the time of the collision Colonel Mc-Daniel, an officer in the Arkansas National Guard stationed at Camp Robinson, North Little Rock, Arkansas, was driving a 1957 Chevrolet automobile owned by the U. S. Army. Colonel Robert J. O'Donnell, an officer in the U. S. Army then stationed at Camp Robinson, and now stationed at Ft. Sill, Oklahoma, was a passenger in said vehicle. Said officers were en route from Camp Robinson to Fort Sill, Oklahoma, to attend a pre-camp conference of U. S. Army officers who were later to conduct a National Guard camp at Fort Chaffee, Arkansas. "Both of said officers were, at the time of said collision engaged in official duties with the U. S. Army and were acting within the scope of their employment by the United States."

That the aforesaid automobile had been assigned to Colonel O'Donnell for his use in carrying out his official duties as an officer of the U. S. Army and for his use in making the trip to Fort Sill, Oklahoma, on February 7, 1961; that the said Colonel O'Donnell had the right to control and direct the operation of the said automobile at and prior to the collision; that Colonel McDaniel was driving the automobile at the time of the collision, "at the direction and request of Colonel O'Donnell, who was in command of said vehicle. Alternatively, Colonel O'Donnell and Colonel McDaniel had a joint or equal right of control over said vehicle at and prior to said collision. Said officers were engaged in a joint enterprise and the negligence of both of them in causing said collision is imputed to the defendant."

Paragraph numbered 6 of the original complaint is as follows:

"6. Said accident, collision, and resulting death, injuries, and damages were directly and proximately caused by negligence on the part of the said Colonel Ernest L. McDaniel, consisting, among other things, of the following:

"(a) In failing to yield one-half of the traveled portion of the highway to plaintiff;

"(b) In failing to keep a proper lookout and observe plaintiff approaching from the opposite direction;

"(c) In failing to keep his automobile under control and on his right-hand side of the highway so as to give plaintiff sufficient clearance for safe passage of his automobile;

"(d) In operating his automobile at an excessive, negligent, and reckless rate of speed under the conditions then and there existing;

"(e) In failing to take every or, in fact, any reasonable precaution to avoid collision with plaintiff and to prevent injury to him and his property; and

"(f) That the said Colonel Ernest L. McDaniel then and there saw plaintiff, in a position of imminent peril in time, by the exercise of ordinary care in use of all the means at his command consistent with the safety of himself and others, to have slackened the speed of his automobile, or stopped it, or turned it aside and avoided the collision with plaintiff and the consequent injuries to plaintiff and the said Dorothy Gilkey, but that the said McDaniel failed so to do, and failed to take any care or caution to avoid or prevent collision with plaintiff."

By the amendment to the complaint, a new paragraph, 6A, was added, as follows:

"6A. Said accident, collision, and resulting death, injuries, and damages were directly and proximately caused by negligence on the part of the said Colonel Robert J. O'Donnell, consisting, among other things, of the following:

"(a) In failing to direct Colonel McDaniel to yield one-half of the traveled portion of the highway to plaintiff;

"(b) In failing to keep a proper lookout and observe the plaintiff approaching from the opposite direction;

"(c) In failing to direct Colonel McDaniel to keep the automobile under control and on his right-hand side of the highway so as to give plaintiff sufficient clearance for safe passage of his automobile;

"(d) In permitting Colonel McDaniel to operate the automobile at an excessive, negligent, and reckless rate of speed under the conditions then and there existing;

"(e) In failing to direct Colonel McDaniel to take every or, in fact, any reasonable precaution to avoid collision with plaintiff and to prevent injury to him and his property; and

"(f) In failing to direct Colonel McDaniel, after he (Colonel O'Donnell) had observed plaintiff, in a position of imminent peril, to have slackened the speed of the automobile, or stopped it, or turned it aside and avoided the collision with plaintiff and the consequent injuries to plaintiff and the said Dorothy Gilkey, but that the said Colonel O'Donnell failed to warn the said Colonel McDaniel, and failed to take any care or caution to avoid or prevent collision with plaintiff, although he observed the plaintiff in a position of imminent peril in time to have so directed the said Colonel McDaniel and in time for the said Colonel McDaniel, by the exercise of ordinary care in the use of all the means at his command consistent with the safety of himself and of others, to have taken said action."

As a result of the negligence of the said Colonel McDaniel and Colonel O'Donnell, Dorothy Gilkey sustained injuries in said collision which caused her death on February 7, 1961. (Then follows allegations pertaining to the age, number of children, etc., of the deceased.)

That as a result of the said Colonel McDaniel's and Colonel O'Donnell's negligence, plaintiff sustained severe and permanent injuries. (Then follows an allegation of the various injuries claimed to have been sustained by plaintiff individually.)

In due time the defendant filed its answer denying each and every allegation of negligence as alleged by the plaintiff, and alleged that the plaintiff was negligent in the operation of his automobile, which negligence was the sole and proximate cause of the collision, and in the alternative that the plaintiff was guilty of negligence of such degree that any recovery by plaintiff should be reduced in proportion to the said negligence of the plaintiff.

That the deceased was guilty of negligence in failing to keep a proper lookout for her own safety, that the deceased and the plaintiff were engaged in a joint enterprise, and that the negligence of the plaintiff was imputed to the deceased.

The defendant included as a part of its answer a counterclaim against the plaintiff, the allegations of which are omitted. However, numbered paragraph 3 of the counterclaim was dismissed by the court on November 19, 1962.

The case was tried to the court on January 11, 1963, and at the conclusion of the presentation of the testimony the case was taken under advisement, subject to submission by the parties of briefs in support of their respective contentions. The briefs have been received, and the court has considered the pleadings, the testimony adduced at the trial, the exhibits and briefs of counsel.

The plaintiff, prior to February 7, 1961, was a citizen of the State of Missouri and resided near the small town of Fisk in said State. On that date he and his wife and young daughter had been visiting relatives in Muldrow, Oklahoma. They had planned to leave Muldrow on the morning of February 7. During the

night of the 6th of February a rather heavy snow fell in the area, which extended to near Little Rock, Arkansas, and the snow continued to fall intermittently, but the plaintiff and his family left Muldrow at 7:00 a. m. the next day. They were traveling in a 1957 Pontiac which was driven by plaintiff. They drove through Fort Smith, and then easterly on State Highway 22 and had reached a point approximately 1½ miles east of New Blaine, Arkansas, when the automobile which the plaintiff was driving collided with an automobile that was being driven by Colonel Ernest L. McDaniel, accompanied by Colonel Robert J. O'Donnell. While it was snowing intermittently during all of the journey, no snow was falling at the time when the collision occurred which was approximately 9:40 a. m. on February 7, 1961.

The concrete pavement of the highway at the place of the collision is 18 feet wide. Although the snow covering the highway and the shoulders varied from 3 to 4 inches in depth, the passage of vehicular traffic had cleared substantially the snow from the portion of the pavement traversed by vehicles in both lanes of travel. Thus in each lane there were well-defined paths practically clear of snow. The two traveled paths in each lane were approximately 18 inches wide. The outside paths were approximately 18 to 20 inches from the edge of the pavement, and the inside paths were separated by a center strip of snow and ice approximately 24 inches in width. The shoulders of the highway in this area were several feet wide with a gradual and moderate decline from the pavement to the edge of the highway right of way; however, there was a drop-off of from 4 to 6 inches from the pavement on both sides which was not discernible due to the recent snowfall. The road ran east and west, was straight and level, and its view was unobstructed for a distance of at least 200 feet in each direction from the point of impact.

On the same morning Colonel McDaniel, an officer in the Arkansas National Guard, was driving a 1957 Chevrolet, owned by the U. S. Army and loaned to the Arkansas National Guard, in a westerly direction at the place of the collision. He was accompanied by Colonel O'Donnell, an officer in the U. S. Army and Senior Advisor to the Arkansas National Guard. Colonel McDaniel, acting under orders issued by the Arkansas National Guard, and Colonel O'Donnell, acting under orders issued by the U. S. Army, were en route from Camp Robinson, North Little Rock, Arkansas, to Fort Sill, Oklahoma, to attend a pre-camp conference of U. S. Army officers who were to conduct a National Guard summer camp. The Chevrolet had been dispatched to Colonel O'Donnell as first operator by the Arkansas National Guard motor pool earlier that morning at 5:30. Since each of the officers had been ordered to attend the conference, Colonel O'Donnell drove to Colonel McDaniel's house on the post and McDaniel entered the automobile. They left North Little Rock at 6:00 a. m.

Although their respective orders specified only that they were to travel in a Government owned vehicle, it had been customary for these officers, whose duties were correlative, to travel together when they had a similar destination. When they reached Morrilton, Arkansas, they stopped at an Army Reserve Center in order to radio ahead to Fort Sill and check on the weather conditions, and when they resumed their trip, Colonel McDaniel began driving the automobile.

Immediately prior to the accident the plaintiff was driving his car at a speed of approximately 40 miles per hour, and he was traveling easterly in the proper lane with the wheels of his automobile in the paths formed in the snow on the concrete surface. As he was coming out of a gentle curve to the left, he saw the vehicle driven by Colonel McDaniel come over an incline 400 feet away. It appeared to the plaintiff that the other vehicle was straddling the center line of the snow in the highway. Plaintiff took his foot off the accelerator, and when the other car did not seem to change its position, plaintiff steered his car to the right and dropped off the con-

crete pavement to the shoulder on his side of the road. At this time the automobiles were 100 to 125 feet apart, and plaintiff had reduced his speed to approximately 15 or 20 miles per hour. As his right front and right rear wheels went off the pavement onto the shoulder, his car began to weave out of control. When the cars were approximately 60 feet apart, the plaintiff's car began to skid sideways at a speed of approximately 15 miles per hour, and it was in that position when the collision occurred.

Colonel McDaniel immediately prior to this time was driving at a speed of approximately 40 miles an hour, and he was keeping the wheels of the Chevrolet in the traveled paths formed in the snow on his own side of the road. He had seen the plaintiff emerge from the curve as the Chevrolet reached the crest of the incline in the road. At this time the cars were at least 400 feet apart. When the cars were 100 feet apart, he noticed that the plaintiff's car began to weave or "wobble." When the cars were approximately 60 feet apart, the plaintiff's car suddenly began to slide broadside, blocking both lanes of travel, and Colonel McDaniel had enough time only to get his foot off the gas and on the brake pedal before the cars collided.

At the time of impact the front end of the Chevrolet struck the right side of the plaintiff's Pontiac between the front wheel and the corner post of the windshield. As a result of the impact, the plaintiff's Pontiac came to rest in its original eastbound lane, facing in a southwesterly direction with its right rear wheel over the center line. The Chevrolet driven by Colonel McDaniel left the road on its right side and ran into a ditch. It came to a stop headed in a northwesterly direction.

The only visible mark left by the automobiles on the pavement was a scratch or gouge caused by some part of the Pontiac's body frame under the right corner post of the windshield, which began at the location of the collision at a point near the center of the westbound lane, extended in an arc to approximately 8 inches from the north edge of the pavement and ended where the Pontiac came to rest in the eastbound lane. As a direct result of the collision, the plaintiff's wife was killed instantly; and the plaintiff himself suffered severe and permanent injuries to his neck and leg, which the court will not set out in detail for the reasons hereinafter discussed.

Title 28, U.S.C. § 2674, provides that the United States shall be liable in tort "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

Title 28, U.S.C. § 1346(b), provides that the United States District Court "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Title 28 U.S.C. § 2671, provides:

"'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

"'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

The use of the automobile while Colonel McDaniel was driving was authorized by the Adjutant General, Arkansas National Guard. He was proceeding to a

pre-camp conference at Fort Sill, Oklahoma, upon an order issued by the Adjutant General of the State of Arkansas under the authority given by the National Guard Bureau of Washington, D. C.

At the time of the collision, Colonel McDaniel was not in active federal service.

Title 10 U.S.C. § 3495, provides:

"Members of the Army National Guard of the United States are not in active Federal service except when ordered thereto under law."

Title 10 U.S.C. § 101(22), provides:

" 'Active duty' means full-time duty in the active military service of the United States. It includes duty on the active list, full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned."

The statutes which authorize the President to order members of the Army National Guard of the United States into active federal service are found in Title 10 U.S.C. § 3500, paragraphs (1), (2) and (3); Title 50 U.S.C. Appendix, § 451(d).

Colonel O'Donnell was on February 7, 1961, and is now an officer in the U. S. Army and was riding with Colonel McDaniel at the time of the collision. There was an administrative finding that the injuries received by Colonel O'Donnell were in the line of duty and not due to his own negligence or misconduct. He had been ordered by the U. S. Army Advisor Group to attend the pre-camp conference at Fort Sill. The automobile in which the officers were driving was dispatched to Colonel O'Donnell as the first operator on Vehicle and Equipment Operational Record DD, Form 110, for the trip to Fort Sill. The use of the vehicle to make said trip was authorized by the Arkansas National Guard, although it was owned by the U. S. Army, but had been issued and assigned by the U. S. Army to the Arkansas National Guard.

Order No. 23, Headquarters, U. S. Army, Advisor Group National Guard, was dated February 3, 1961, and ordered Colonel O'Donnell on temporary duty from North Little Rock, Arkansas, to Fort Sill, Oklahoma, on or about February 7, 1961, for approximately four days in connection with National Guard activities. He was to go and return by government vehicle.

Colonel McDaniel, while driving the automobile, was not subject to direction or discipline by Colonel O'Donnell, notwithstanding that Colonel O'Donnell was first granted a temporary commission as Colonel on January 31, 1955, and a permanent regular Army commission on April 15, 1961, while Colonel McDaniel was commissioned a Colonel in the Arkansas National Guard on July 25, 1960. Neither was subject to orders of the other. They were traveling companions and both were acting in accordance to the orders received from their respective superiors.

■■ Without doubt, at the time of the collision Colonel McDaniel was not an employee of the United States. He was an Arkansas National Guard officer and acting under orders of the Adjutant General of the Arkansas National Guard. Ordinarily the United States is not liable for negligence of a member of the Army National Guard unless he is in active federal service. Dover v. United States (5 Cir., 1951), 192 F.2d 431; Williams v. United States (10 Cir., 1951), 189 F.2d 607; McCranie v. United States (5 Cir., 1952), 199 F.2d 581, cert. den. 345 U.S. 922, 73 S.Ct. 780, 97 L.Ed. 1354; United States v. Prager (5 Cir., 1958), 251 F.2d 266; Storer Broadcasting Company v. United States (5 Cir., 1958), 251 F.2d 268.

In the case of Spangler v. United States (S.D.Ohio 1960), 185 F.Supp. 531, the court said:

"The sole issue involved in this controversy is whether or not a person engaged in training with a National Guard Unit during the two week active duty for training period

394

provided for in Title 10 U.S.C.A. § 672(b) and Title 32 U.S.C.A. Sec. 502(a) is an employee of the United States Government within the meaning of Title 28 U.S.C.A. § 1346 (b), the Federal Tort Claims Act.

\* \* \* \* \* \*

"It should be noted that plaintiffs do not dispute the existing law: i. e., plaintiffs would have no cause of action if the National Guard Unit of which Sergeant Dickey was a member had been engaged purely in a state activity. See Dover v. United States, 5 Cir., 1951, 192 F.2d 431 and Williams v. United States, 10 Cir., 1951, 189 F.2d 607.

"It is plaintiffs' contention that since the unit of the Ohio National Guard of which Sergeant Dickey was a member was on the two week active duty for training period, Sergeant Dickey was, during that two week period, an employee of the Federal Government within the terms of the Federal Tort Claims Act.

\* \* \* \* \* \*

"This court is led to the conclusion that a member of the National Guard, which has not been ordered into the active Federal service, even during the two week active duty for training period as provided for in Title 10 U.S.C.A. § 672(b) and Title 32 U.S.C.A. § 502(a), is not an employee of the United States Government so as to render the Government liable for his negligence under the Federal Tort Claims Act."

In United States v. Taylor (6 Cir., 1956), 236 F.2d 649, 74 A.L.R.2d 860, the court at page 653 said:

"In the case of a member of the military or naval forces of the United States, it is provided by statute that ' "Acting within the scope of his office or employment" ' means 'acting in line of duty.' 28 U.S.C.A. § 2671. It has been conclusively settled, however, as the district court correctly held, that although 'line of duty' may have a different mean-

ing in connection with benefit claims by members of the Armed Forces or their dependents, the standard of governmental liability under the Federal Tort Claims Act is with respect to both military and civilian employees that imposed by the respondeat superior doctrine of the state. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, [100 L.Ed. 761] reversing, 9 Cir., 1954, 215 F.2d 800; United States v. Campbell, 5 Cir., 1949, 172 F.2d 500; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914."

■ Since the decision of Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, the rule has been and now is that insofar as members of the military and naval forces are concerned, "scope of employment" or "line of duty" is to be determined by the state law of respondeat superior for purposes of establishing jurisdiction under 28 U.S.C. §§ 1346(b) and 2671. See: O'Toole v. United States (2 Cir., 1960), 284 F.2d 792; Mandelbaum v. United States (2 Cir., 1958), 251 F.2d 748; and Hopson v. United States (W.D.Ark.1956), 136 F. Supp. 804, 812.

■ The liability of the defendant for damages must be determined in accordance with the law of the place of occurrence. See, Redding v. United States (W.D.Ark.1961), 196 F.Supp. 871.

In view of the facts as heretofore set forth and the provisions of the jurisdictional statute, 28 U.S.C. § 1346(b), the court must first determine, under the substantive law of the State of Arkansas, whether Colonel McDaniel was guilty of negligence which can be imputed to the United States. If, under the facts and the provisions of the jurisdictional statute, the court should determine that the United States is not liable regardless of the question of negligence of Colonel McDaniel, then the complaint and the amendment thereto should be dismissed.

The plaintiff contends that under the law of Arkansas and under the facts that the defendant is liable for the negligence

of Colonel McDaniel for three reasons: "(1) McDaniel, in driving the car, was the agent of O'Donnell and the United States—custodian and owner of the car respectively; (2) the negligence of McDaniel is imputable to the United States under the doctrine of the employer's liability for the negligent acts of an assistant or helper of the employee; and (3) the negligence of McDaniel was imputable to O'Donnell and the United States under the doctrine of joint venture."

These contentions will be considered in the order above stated.

The first contention is that McDaniel was the agent of O'Donnell and the United States while driving the automobile.

█ As heretofore stated, McDaniel was ordered by the Adjutant General of Arkansas to attend a pre-camp conference at Fort Sill, Oklahoma, and authorized to travel by government automobile. Likewise, O'Donnell was ordered by the Headquarters of the U. S. Army Advisor Group to attend the pre-camp conference and to travel by government automobile. The order of McDaniel authorized him to begin the journey on February 7, and likewise the order of O'Donnell also fixed that date as the beginning of travel. On that morning the vehicle was dispatched to Colonel O'Donnell as the first operator. In other words, both officers had orders to go to the same place at the same time and to travel by government automobile which was in the possession of the Army National Guard of Arkansas. Obviously O'Donnell had no authority to appoint McDaniel as an agent of the United States, nor as his agent to drive the automobile. Both officers were to travel in the same automobile under valid orders issued by their superiors. McDaniel was not the agent of O'Donnell or of the United States any more than O'Donnell was the agent of McDaniel and the Army National Guard of Arkansas. They were independent of each other and each had only the authority granted by the respective orders.

While McDaniel was driving the automobile he was acting under the order issued to him by the Adjutant General of the National Guard of Arkansas, and while O'Donnell was driving the automobile he was acting within the scope of his employment as a Colonel of the U. S. Army and in line of duty required of him by the order of his superiors.

In Restatement, Agency 2d, Sec. 265, the rule is stated as follows:

"(1) A master or other principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority.

"(2) Unless there has been reliance, the principal is not liable in tort for conduct of a servant or other agent merely because it is within his apparent authority or apparent scope of employment."

Comment on Subsection (2), appearing on page 576, is as follows:

"b. Unless one within apparent authority causes others to act, the existence of apparent authority does not cause a principal or master to be liable for trespass to the person or to land, nor, except as stated in Sections 266, 267, for negligently caused physical harm."

Sections 266 and 267 discuss the requisites of liability on the part of the master, to-wit: That before a person injured may maintain a cause of action under the facts and circumstances existing in the instant case, it must be established that the person injured relied upon tortious representations, or upon representations of the principal that the tortfeasor was the servant and that the injured person justifiably relied upon the care of skill of the apparent agent.

In 2 A.L.R.2d, page 407, the annotator in discussing the essentials of the apparent-authority doctrine stated:

"In order to determine, on reason and principle, whether the doctrine of apparent authority applies to the relationship of master and servant it is necessary to notice closely what that doctrine really is, and in particular its basis.

"Apparent authority, sometimes called ostensible authority, is not actual authority. It is not even implied authority, since that is actual authority. Apparent authority, is that which, by reason of prevailing usage or other circumstance, the agent is in effect held out by the principal as possessing. It is a matter of appearances, fairly chargeable to the principal, and by which persons dealt with are deceived, and on which they rely. It includes that which one conversant with the practices of the business would reasonably believe the agent in fact possessed."

In Curtis Circulation Co. v. Henderson (1961), 232 Ark. 1029, 342 S.W.2d 89, the court at page 1034 of 232 Ark., at page 92 of 342 S.W.2d said:

"There was no evidence showing anything from which any inference as to 'apparent scope of authority' could be drawn. Further, the doctrine of 'apparent scope of authority' has no application in tort cases unless there has been a reliance upon apparent authority which caused the injury complained of. See Restatement of Agency 2d, Sec. 265, Subsection 2, p. 575, and comment on same at page 576. For the error indicated, the case is reversed and remanded for a new trial."

■ There is no evidence in the instant case that the plaintiff prior to the collision had any information or acted upon any information which would lead a person to believe that the driver of the automobile was acting as the agent of O'Donnell or the defendant, United States. Under the provisions of 28 U.S.C. § 1346(b) and 2674, and the facts as disclosed by the record, McDaniel was not the agent of O'Donnell or of the defendant, United States, when he was driving the automobile at the time of the collision.

The second contention that the negligence of O'Donnell is imputable to the United States under the doctrine of respondeat superior due to the negligent acts of an assistant or helper procured by the employee is closely related to the first contention. It presents the two-fold issue of (1) whether Colonel McDaniel, as the driver of a United States Army automobile assigned to the Arkansas National Guard, was acting in the scope of his employment or line of his duty as an Arkansas National Guard officer or as the assistant or helper to Colonel O'Donnell, a regular United States Army officer, who was accompanying him to the same destination; and (2) whether Colonel O'Donnell, within the scope of his employment or line of his duty as a United States Army officer procured the assistance of Colonel McDaniel in driving the automobile.

■ At all times pertinent to the instant action, Colonel McDaniel was an employee of the Arkansas National Guard. The question then is whether at any time he deviated from the scope of his employment or line of duty by driving the automobile in the presence of Colonel O'Donnell. The general rule which sets forth the elements necessary to impose liability of an employer for the negligent acts of his employee is stated in 5A Am.Jur., Automobiles and Highway Traffic, Sec. 633, as follows:

" * * * In order to impose liability upon the owner, the plaintiff must establish also that at the time of the accident the employee was using the automobile in the course of his employment, and on the employer's business, or at the direction and command of the employer. * *

"The general test of the employer's liability is whether there was authority expressed or implied for doing the act in question. If it is done within the course of and scope of his employment, the employer will be liable for the act, although the employer is not liable for every wrong which the employee may commit during the continuance of the employment; liability can occur only when that which is done is within the scope of the employer's

business, or where the employer subsequently ratifies the employee's unauthorized act. If, however, it appears that the plaintiff or his decedent was injured by reason of the negligent operation of the defendant's automobile by an employee of the defendant acting within the scope of his authority or employment, the defendant is liable if the employee was negligent. His acts in operating an automobile within the lines of his employment are the acts of an employee, for which his employer is responsible. This rule applies whether the employer is present in the car or not. The expression, 'in the course of employment,' means, in contemplation of law, 'while engaged in the service of the employer'; it is not synonymous with the phrase, 'during the period covered by his employment.'

"Assuming that a relationship of employer and employee exists between the driver of the automobile causing the injury and the person sought to be held responsible, the question whether the driver, at the time of an accident, was acting within the scope of his employment generally involves an inquiry into the contract of employment and the relation of his acts at the time of the accident to the service he actually performed pursuant to his employment. * * * However, any use of a car which is reasonably incidental to the performance of the duties with which the employee is charged is deemed to be within the scope of his employment."

Arkansas law is in accord with these principles. See: United Transport, Inc., v. Wilson, 228 Ark. 1058, 312 S.W.2d 191 (1958); Southern National Ins. Co. v. Williams, 224 Ark. 938, 277 S.W.2d 487 (1955); and Page Lumber Co. v. Carman, 214 Ark. 784, 217 S.W.2d 930 (1949).

Thus, turning to the actions of McDaniel, there is no question, in view of the law and facts, that at all times pertinent to the instant action he was driving the U. S. Army automobile issued to the Arkansas National Guard, of which the Guard had assumed the responsibility as bailee, in the scope of his employment or line of duty as a National Guard officer. That is, he was ordered to proceed to Fort Sill in the discharge of his responsibilities as an Arkansas National Guard officer, and his actions were defined by these orders alone whether he drove the car himself or rode as a passenger. There is no evidence that McDaniel was operating the automobile for the United States as O'Donnell's assistant or in any other capacity, nor that he was under the directions and control of the U. S. Army.

As for Colonel O'Donnell, it is admitted that at all times pertinent to the instant action, he was employed as a U. S. Army officer, and in view of the law and facts as heretofore stated, his travel to Fort Sill in an automobile assigned to and in the possession of the Arkansas National Guard was within the scope of his employment or line of duty, regardless of whether he or Colonel McDaniel was driving. The question to be determined here is whether Colonel O'Donnell, acting within the scope of his employment or line of duty, procured the assistance of McDaniel in driving the automobile in question so as to allow McDaniel's negligence, if any, to be imputed to the United States through its employee, O'Donnell.

■ In this connection, the general rule imputing liability to an employer for the acts of a person driving with consent of an employee is stated in 5A Am. Jur., Automobiles and Highway Traffic, Sec. 641, as follows:

"Where there is some apparent conflict of authority as to the liability of the owner of an automobile for damages for injuries resulting from the negligent operation of his automobile by one who was permitted by the owner's employee to drive it, it is clear that the mere fact that an employee permits another to operate the employer's car temporarily does not necessarily absolve

the owner from liability for injuries due to the negligence of the temporary driver. The issue is whether the employee can be said to have authority to authorize or permit a third person to drive. The owner ordinarily is not liable for injury or damage resulting from the negligent operation of the automobile by one who was permitted to operate the same by the one to whom it was entrusted by the owner, where the employee had no authority, express or implied, to permit another to drive, or to hire assistants, at least if there is no emergency which requires that someone other than the driver operate the car. * * *

"If, on the other hand, one employed to drive an automobile has express or implied authority to employ or permit another to assist him, the employer is liable for the negligence of the assistant. An owner is not relieved from liability for injury done by the car, the operation of which his employee has wrongfully delegated to another, so far as it is caused by negligence assignable to his employee, who remains upon the vehicle with general power and authority of supervision and control. * * *"

Arkansas law is in accord with this rule and carries it one step further by stating that when the servant of the master allows a third party to perform his duty, that if he is negligent, and his negligence causes injury, it is the negligence of the servant and the master is thereby liable. See: Malco Theatres, Inc., v. McLain, 196 Ark. 188, 177 S.W.2d 45 (1938); Pullen v. Faulkner, 196 Ark. 231, 177 S.W.2d 28 (1938); Interurban Trans. Co., Inc., v. Reeves, 194 Ark. 321, 108 S.W.2d 594 (1937); and Federal Compress & Warehouse Co. v. Jones, 180 Ark. 476, 21 S.W.2d 857 (1929).

Turning to the facts, it is clear that O'Donnell was not authorized by the United States, expressly or impliedly, to procure assistance in driving the automobile to Fort Sill. Also, it is clear that O'Donnell had no control over the actions of McDaniel at any time, or vice versa, since they were each officers in the military service of two different governments, and this element of control is indispensible to show even a subemployment situation as contended by the plaintiff in the instant case. There is no doubt that at all times pertinent to the instant action O'Donnell and McDaniel pursued their respective scopes of employment or lines of duty which they owed their separate employers, O'Donnell being a U. S. Army officer and McDaniel an Arkansas National Guard officer; and this was true regardless of who drove the automobile and who rode as a passenger at any given time. McDaniel did not serve two employers at the same time by driving the automobile as O'Donnell's assistant; and by the same token, at no time did O'Donnell procure the assistance of McDaniel as his sub-employee. At the most, O'Donnell rendered an incidental benefit to McDaniel when he took his turn at driving, and McDaniel rendered no more when he reciprocated the favor by taking his turn at the wheel.

The fact that the automobile was owned by the United States and loaned to the Arkansas National Guard will not suffice alone to impose liability upon the United States in the instant action. Mackay v. United States, (D.Conn.1949) 88 F.Supp. 696.

Also, this situation does not involve the doctrine of loaned employee as set out in 35 Am.Jur., Master and Servant, Sec. 541, either on the part of O'Donnell or McDaniel. See, also, Fries v. United States (6 Cir., 1948), 170 F.2d 726.

Plaintiff's third contention is that the negligence of Colonel McDaniel is imputable to Colonel O'Donnell and the United States under the doctrine of joint venture.

The law of joint venture governing the relationship of employees riding in the same automobile while engaged in the same general business is stated in the recent case of Woodard v. Holliday (1962), 235 Ark. 744, 361 S.W.2d 744,

as follows, beginning at page 746 of 235 Ark., at page 745 of 361 S.W.2d:

"This court has consistently held that in order for a joint enterprise to arise two fundamental and primary requisites must concurrently exist, to-wit: A community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right to direct and govern the movements and conduct of each other in respect thereto. If either or both of these elements is absent, there is no joint enterprise. Stockton v. Baker, 213 Ark. 918, 213 S.W.2d 896.

"In the case of Wymer v. Dedman, Ark., 350 S.W.2d 169, we quoted with approval the following excerpt from 4 Blashfield, Cyclopedia Automobile Law Practice, Ch. 65, § 2373, pp. 500–501:

" 'The doctrine of joint adventure, in connection with the operation of motor vehicles, should be restricted to those cases where the common right to control its operation and the correlative common responsibility for negligence in its operation either are clearly apparent from the agreement of the parties or *result as a logical and necessary conclusion from the facts as found.'* [Emphasis ours.]

\*   \*   \*   \*   \*   \*

"Prosser on Torts (2d Ed.), § 65, discussing the law of joint enterprise, states that:

" 'The prevailing view is that a joint enterprise requires something beyond the mere association of the parties for a common end, to show a mutual "right of control" over the operation of the vehicle—or in other words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver. In the absence of circumstances indicating such an understanding, it has been held that \* \* fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise.'

"Many cases have denied the existence of a joint enterprise where nothing was shown except that two fellow employees had been riding together upon a common mission in the course of their employment. [Citing cases.]

"In the case at hand the testimony does tend to establish the first requirement, a common purpose. But they do not show that Yount agreed that Woodard was entitled to an equal voice in the control of the car or that, if the two had been riding in Woodard's automobile, Yount would have had such an equal voice in its control. (The latter situation is important, because any control that Woodard might have exercised as a superior employee would not satisfy the requirement of equality of control.) Joint control and joint responsibility should go hand in hand; neither should exist without the other. If the passenger shares the responsibility for the physical control of the vehicle then it is proper for him to share the liability for the driver's negligence. But if the responsibility of control is not shared then the liability ought not to be shared. In the case at bar the trial court's error lies in permitting the jury to infer the existence of the second requirement from proof of the first, which in effect amounted to doing away with the second requirement altogether."

██ As the court has stated above in its discussion of the facts, neither officer had the authority to exercise control over the other by directing the other's activities, and this mutual absence of control does not produce the equality of control

necessary to make their community of interest blossom into a joint venture.

The isolation of each officer in his respective command position is highlighted by defendant's Exhibit No. 12, which is a certified copy of National Guard Regulations No. 40, and governs the status and activities of U. S. Army personnel on duty with the National Guard. Sec. I, inter alia, states as follows:

"2. Status.—a. General.—Officers of the active Army on duty with the National Guard are a part of the Army or oversea command and are not subject to orders of the State authorities. On the other hand, officers of the active Army have no authority to issue orders to personnel of the National Guard unless they are, themselves, commissioned in the National Guard in accordance with provisions of NGR 20–1 and as authorized in Section 65, National Defense Act, as amended. In such cases, officers of the active Army serve in a dual capacity as National Guard officers and advisors.

＊　＊　＊　＊　＊　＊

"10. Duties of advisors.—a. Instruction.—Since advisors have no command status with respect to the National Guard, their major duty lies in furthering the efficiency of the unit, or units, to which they are assigned through appropriate assistance and advice to the responsible commander. The full responsibility for the administration of a National Guard unit, to include classification, instruction, training, supply, and discipline, devolves upon the responsible National Guard commander."

Therefore, in view of the facts and applicable law heretofore set forth, the court is of the opinion that it lacks the power to adjudicate the instant action as a tort claim based upon the alleged negligence of Colonel McDaniel as an employee of the United States acting within the scope of his employment, for the reasons that Colonel McDaniel was not driving the automobile as the agent of Colonel O'Donnell and of the United States; Colonel O'Donnell had not procured Colonel McDaniel's services as an assistant or helper; and Colonel McDaniel and Colonel O'Donnell were not engaged in a joint venture.

Judgment dismissing the plaintiff's complaint and amendment thereto, and further providing that the plaintiff should pay the costs incurred by him and the defendant should pay the costs incurred by it, is being entered today.