**John B. WITT, Plaintiff-Appellant,**

v.

**UNITED STATES of America et al., Defendants-Appellees.**

No. 661, Docket 72–1041.

United States Court of Appeals, Second Circuit.

Argued April 18, 1972.

Decided June 14, 1972.

Ronald J. Koerner, Brooklyn, N. Y. (Rose & Koerner, on the brief), for plaintiff-appellant.

Dennis J. Helms, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, on the brief), for defendant-appellee United States of America.

John M. Percy, New York City (J. Robert Morris, on the brief), for defendants-appellees Sapp, Reeder, Jr., and Fort Leavenworth Hunt Club.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal by John B. Witt is taken from a judgment in favor of the United States in an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. For reasons set forth below, we reverse.

In 1965, appellant Witt was a military prisoner assigned to the Parolee Unit at the United States Disciplinary Barracks, Fort Leavenworth, Kansas.[1] On the morning of November 21 of that year, Witt and three other prisoners "volunteered" for a prison work detail shoveling manure at the stables of the Fort Leavenworth Hunt Club. The Hunt Club, which had frequently requested prison labor, was a private association of military personnel and their dependents located on the military reservation at Forth Leavenworth. The particular work detail on November 21 was to help prepare the stables for an inspection by the Commanding General the following

---

1. Witt had been dishonorably discharged and was no longer a member of the Army.

day. Prior to November 21, the Hunt Club had contracted with Bob Harrison, a civilian, to manage and maintain the stables. Harrison, in turn, had hired Patrick Finch McQuirk, another civilian, to help him. On November 21, McQuirk drove to the Parolee Unit in a tractor with a trailer hitched behind; he picked up Witt and the other prisoners and transported them in the trailer to the Hunt Club for the work detail. At about noon, McQuirk was to drive the prisoners back to the Parolee Unit for lunch. But in re-hitching the trailer, McQuirk negligently failed to secure the restraining nut on the bolt that connected the trailer to the tractor. As a result, on the return trip the trailer uncoupled while descending a hill. Witt was forced to jump from the trailer and in doing so struck his head on the ground, sustaining "a non-depressed fracture of the parietal bone of his head."

These facts were found by Judge Irving Ben Cooper after a trial without a jury in the United States District Court for the Southern District of New York. Judge Cooper concluded, however, that the United States, the principal defendant in this action, was not liable to Witt under the Federal Tort Claims Act. We disagree and reverse.[2]

■ Subject to various exceptions, the Federal Tort Claims Act permits suits against the United States for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his . . . employment. . . ." 28 U.S.C. § 1346(b). The Act may be invoked by federal prisoners. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Judge Cooper concluded that McQuirk's negligent act—the "sole proximate cause of the accident" —could not render the United States liable here because McQuirk, the civilian

tractor driver, was not an "employee of the Government." Judge Cooper accepted the Government's argument that McQuirk, paid solely by Harrison, was Harrison's employee. And even if McQuirk could also be considered an "employee" of the Hunt Club, the United States would still not be liable since the Hunt Club was not a "federal agency" or instrumentality of the federal government. See Scott v. United States, 226 F.Supp. 864 (M.D.Ga.1963), aff'd, 337 F.2d 471 (5th Cir. 1964), cert. denied, 380 U.S. 933, 85 S.Ct. 939, 13 L.Ed.2d 821 (1965) (Fort Benning Hunt Club).

We believe it is unnecessary for us to explore the Hunt Club's relationship to the Army or McQuirk's relationship to the Hunt Club. Our disagreement with the district judge and the Government's position lies in our conclusion that McQuirk was acting as an employee of the United States Disciplinary Barracks at the time of the accident and that, therefore, the United States is liable for the injuries caused by his negligence.

■■ The Tort Claims Act defines an "employee of the Government" to include:

> employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

28 U.S.C. § 2671. This definition is not without boundaries, see Maryland, for the use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), but quite clearly the statutory language was drafted to have an expansive reach, see Gottlieb, the Federal Tort Claims Act—A Statutory Interpretation, 35 Geo.L.J. 1, 11–12 (1946); Martarano v. United States, 231 F.Supp. 805, 807–809 (D.Nev.1964), and should be applied with an eye to general agency law rather than to the formalities of employment

---

2. The Hunt Club and its officers and members were also sued in a consolidated action. Since plaintiff apparently seeks

relief against these defendants only in the alternative, we need not rule on their liability or on their objection to venue.

contracts. Here, although no written agreement existed, McQuirk was impliedly authorized by the Commandant of the Disciplinary Barracks to transport prisoners in his custody to a work detail (for which, as will be seen below, prisoners received credit), to supervise or help supervise that detail and to return the prisoners. Moreover, McQuirk was certainly amenable to some degree of control by the Disciplinary Barracks. In such circumstances, McQuirk was "acting on behalf of a federal agency in an official capacity, temporarily . . . in the service of the United States . . . without compensation." An analogous situation was presented in Close v. United States, 130 U.S.App. D.C. 125, 397 F.2d 686 (1968) (per curiam). There, the court held that the United States was liable for an injury suffered by a federal prisoner while he was temporarily committed to a non-federal facility, the District of Columbia Jail. The court emphasized (397 F.2d at 687):

> Since the Congress has clearly committed the custody and safekeeping of federal prisoners upon conviction to the Attorney General, then it must be true that in this instance the D.C. jailer was serving as the Attorney General's jailer; and it must also be true, or at least it does not appear to the contrary in the record before us, that, as to this federal prisoner, the Attorney General had some degree of power, commensurate with his continuing responsibility, to supervise the D.C. jailer in his handling of this particular prisoner.

The Government attempts to distinguish Close by arguing that "Witt was a parolee, free to work without restraint at the Hunt Club." But the supposed freedom of a parolee at Fort Leavenworth can be overstated; we are told that if Witt attempted to leave the military reservation he could have been shot. Moreover, that Witt was permitted to "volunteer" to clean the stables at the Hunt Club on a Sunday does not mean that he, his fellow prisoners and McQuirk were engaged in personal, leisure-time activity. Witt was on an authorized prison work detail. As the district court found:

> Army Regulations permitted parolees to perform work for a private association such as the Hunt Club. Parolees at the Local Parolee Unit *could volunteer for work details and in return receive compensatory time off from their regular work assignments.* [Emphasis added.]

The Government also maintains that at the time of the accident Witt was a "loaned servant," serving the interest of the Hunt Club, which in turn became responsible for his well being. See Generally Restatement (Second) of Agency § 227. But if this case must be cast in the "loaned servant" mold, it is McQuirk, not Witt, who would be that servant—at least in his transportation of prisoners to and from the work detail.

We suggest that the Government's very attempt to squeeze this case into its version of the "loaned servant" doctrine actually begs the question at the heart of this controversy. In an earlier tort claims action, Justice Jackson candidly admitted: "This is one of those cases that a judge is likely to leave by the same door through which he enters." Elaborating, the Justice quoted "a master of our craft":

> *Some* theory of liability, some philosophy of the end to be served by tightening or enlarging the circle of rights and remedies, is at the root of any decision in novel situations when analogies are equivocal and precedents are silent. [Cardozo, The Growth of the Law, p. 102. (Emphasis his own.)]

Dalehite v. United States, 346 U.S. 15, 49, 73 S.Ct. 956, 975, 97 L.Ed. 1427 (1953) (dissenting opinion).[3] Basically,

3. Perhaps we should note that the majority's holding in *Dalehite*, which has recently been re-affirmed by the Supreme Court in Laird v. Nelms, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972), relates to issues not relevant to this appeal.

what the Government presses on this appeal is a "tightened" philosophy: When Witt climbed into the trailer, the responsibility of the Disciplinary Barracks for him stood at the curbside. We take a different view. On the day of the accident, the Commandant of the Disciplinary Barracks had "custody of all offenders sent there" and was under a duty to "control and employ offenders as he considers best for their health and reformation. . . . "[4] Such a duty may not be absolutely non-delegable, as Witt asserts, but in our view, the duty is an important and broad one. It should not be sidestepped simply by having McQuirk rather than a permanent employee or an enlisted man transport the prisoners, and similarly the duty should not be affected because a particular work detail was "voluntarily" chosen in lieu of other regular work assignments.

In sum, on the facts found by the district court, we hold that the United States is liable to Witt for any injuries he suffered. As to the extent of those injuries and resulting damages, we have already noted that the district court found that Witt suffered a "non-depressed fracture of the parietal bone of his head." On appeal, the Government argues: "After all, it is well known that a 4-cm. non-depressed fracture of a bone in the head is merely a crack in the skull a shade longer than an inch and a half and in itself a very minor injury with no necessary sequelae." The Government cites no medical authority for this interesting observation, but even if it is correct, Witt is still obviously entitled to *some* damages for his injury. Apparently, the district judge was unimpressed by many of Witt's claimed "sequelae," but we cannot treat the issue as having been fully and finally decided.

The judgment is reversed and the case remanded for an assessment of appropriate damages against the Government.

---

4. 10 U.S.C. § 3661 (repealed in 1968; for present analogue see 10 U.S.C. § 951(c)).