**Loren Christian BRANDES, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. C–82–1982 RPA.

United States District Court,
N.D. California.

Aug. 4, 1983.

Edwin Caldwell, San Francisco, Cal., for plaintiff.

Sandra Willis, Asst. U.S. Atty., G. William Philley, Cesari, Werner & Moriarity, San Francisco, Cal., for defendants.

## OPINION AND ORDER

AGUILAR, District Judge.

This case raises questions concerning the government's potential liability under the Federal Tort Claims Act for the acts of an individual who was not technically an employee of the government. Defendant, Ms. Rue W. Dann, was driving a government car when she collided with plaintiff. Plaintiff was injured and brought suit against the government under the Federal Tort Claims Act, (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, and against Dann individually.

In a series of earlier motions, the government sought a ruling that the government is not responsible for any damages because Dann was not a government employee at the time of the accident. Similarly, plaintiff sought a ruling of partial summary judgment arguing that the Court should consider Dann to be a government employee for purposes of the FTCA. On February 24, 1983, the Court granted plaintiff's motion for partial summary judgment, finding that under the facts and circumstances of this case, Dann was a government employee within the meaning of the FTCA. Now, the government seeks reconsideration of the Court's Order granting partial summary judgment.[1]

The relevant facts are as follows. Dann's fiance, Dr. John Ziegler, accepted a job with the Veterans Administration in San Francisco. In June 1981, Ziegler and Dann came to San Francisco from Washington D.C. to search for a house. Dr. Ralph Goldsmith, Chief of Staff of the San Francisco Veterans Administration issued a U.S. government car to Ziegler and Dann to facilitate their househunting.

On June 7, 1981, Dann drove to Oakland to pick up her daughter to show the daughter a house Ziegler and Dann were interested in buying. Ziegler and Dann wanted Dann's daughter to live with them in California and therefore saw her approval as important. On the return trip from Oakland, Dann collided with plaintiff's motorcycle. Plaintiff was injured in the accident.

Plaintiff filed an administrative claim with the Veterans Administration on August 26, 1981. The Veterans Administration denied the claim on April 4, 1982. On April 27, 1982, plaintiff filed suit against Ziegler and Dann in Superior Court for Marin County. On May 4, 1982, plaintiff filed the instant action in federal court against both the United States and Dann.

## DISCUSSION

To determine whether the government may be held liable under the FTCA for Dann's actions, the Court must first turn to the language of the FTCA set forth at 28 U.S.C. section 1346(b):

district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

"This provision of the FTCA waives the sovereign immunity of the United States

---

[1] Defendant moves under FRCP 59(e) to vacate this Court's grant of partial summary judgment on the grounds that said judgment is unsupported by the factual record, is contrary to law, and is clearly erroneous. The Court believes this case raises significant questions of law and therefore, will address the motion for reconsideration.

from suits brought to recover for damages caused by 'the negligent or wrongful act or omission of any employee of the Government.'" *In Re Bomb Disaster at Roseville, Cal. on April 28, 1973,* 438 F.Supp. 769, 775 (E.D.Cal.1977).

The FTCA defines an employee of the government as follows:

Employee of the government includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

28 U.S.C. § 2671.

 Under Ninth Circuit precedent, whether a person is an "employee of the government" within the meaning of the FTCA is a question of federal law. *Brucker v. United States,* 338 F.2d 427, 428 n. 2 (9th Cir.1964), *cert. denied,* 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965). There is no specific body of federal law that addresses employee-employer relationship. However, federal case law indicates that this question should be resolved with reference to general principles of agency law. *United States v. Becker,* 378 F.2d 319, 321 (9th Cir.1967); *Brucker v. United States; Accord Slagle v. United States,* 612 F.2d 1157 (9th Cir.1980). In *Brucker, Becker,* and *Slagle,* the Court of Appeals followed the Restatement (Second) of Agency § 220(2) (1958) definition of "servant" to determine whether an individual was a government employee.[2] These courts held that all of the Restatement's "agency" factors relevant to a particular case should be considered. Ultimately the trier of fact determines whether sufficient factors are present to establish the employer-employee relationship. RESTATEMENT (SECOND) OF AGENCY § 220(1) comment c (1958).

Recently, in *Slagle,* the Ninth Circuit employed the type of analysis dictated by the *Becker* and *Brucker* opinions. In *Slagle,* the plaintiff voluntarily accompanied Wheeler, an informant, to purchase drugs in Napa, California. During the transaction, an argument ensued and plaintiff was shot and paralyzed. Plaintiff brought suit against the United States under the Federal Tort Claims Act. Plaintiff's theory was that his injuries were caused by the negligence of the Government in the selection and supervision of Wheeler, and by Wheeler's negligence at the site of the incident.

Applying the "agency" factors set forth in the Restatement (Second) of Agency,[3] the Court of Appeals ruled that Wheeler was not a government employee for purposes of the FTCA. The Court found that Wheeler's activities were not subject to the actual control or right of control of a federal agent; Wheeler had not contacted the Special Agent to inform him of his trip to Napa, contrary to the general guidelines, nor was he sent to Napa by the Bureau of Narcotics and Dangerous Drugs (BNDD); finally, the place of work, instrumentalities, or tools were not supplied by the BNDD. *Slagle, supra,* 612 F.2d at 1161.

**2.** RESTATEMENT (SECOND) OF AGENCY § 220(2):

In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

**3.** See footnote 2 for a list of the "agency" factors.

In the case at bar, three of the factors mentioned in the Restatement are especially significant in determining the existence of an employee-employer relationship. First, whether the employer had "control or the right to control" the employee. RESTATEMENT (SECOND) OF AGENCY § 220(2)(a). Second, whether the employer or employee supplied the instrumentalities. *Id.* at § 220(2)(e). Third, whether the work was part of the regular business of the employer. *Id.* at § 220(2)(h).

1. *Was There Control or Right to Control Employee?*

With respect to control or the right to control, the Restatement (Second) of Agency states;

> (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

RESTATEMENT (SECOND) OF AGENCY § 220(2)(a) (1958). In *Witt v. United States,* the Second Circuit found a tortfeasor to be a "government employee" under the FTCA because his activities were subject to "some degree" of government control. 462 F.2d 1261, 1264 (2d Cir.1972).

█ In the instant case, there are substantial indicia of the government's right to control Dann and her use of the government car. In loaning the car, the government had the right to establish any restrictions on the use of the vehicle. However, the only limitation that the government imposed was an admonition that the car should not be driven farther than seventy (70) miles from San Francisco. There is no evidence that either Ziegler or Dann were told that Dann was not allowed to drive the car.

In fact, the evidence strongly suggests that the government was aware that both Ziegler and Dann would drive the car. Both Ziegler and Dann were present when Dr. Goldsmith gave Ziegler the keys to the car and informed them of the seventy (70)

mile restriction. Further, Dr. Goldsmith has admitted that "it was certainly implicit that Dr. Ziegler and Ms. Dann would utilize the car for house-hunting purposes." (Goldsmith letter dated August 20, 1982.)

█ It is apparent to the Court that the government had the right to set restrictions or limitations on Dann's use of the car. The government could have specifically instructed that Dann was not permitted to use the car at all. In this way, the government had a complete right to control Dann's activities with respect to the government car. The fact that the government chose not to exercise its right to control does not in any way vitiate the existence of this right. "The word 'control' means the right to control, rather than the actual exercise of that right ... a master may not escape liability for acts of his servant simply by failing to exercise his right of control over the servant." *Melson v. Allman,* 244 A.2d 85, 87–88 (Del.1968).

2. *Who Supplied the Instrumentality?*

The Restatement (Second) of Agency sets forth another factor to be considered as follows:

> (e) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;

RESTATEMENT (SECOND) OF AGENCY § 220(2)(e) (1958).

In the present case, the government owned and controlled the instrumentality that was involved in the alleged tort. Furthermore, a high ranking official of the Veterans Administration voluntarily provided the government car to Ziegler and Dann for househunting purposes. Thus, Ziegler and Dann had possession of the car at the government's behest and were using the vehicle pursuant to an authorized loan.

The government argues that case law in other circuits, indicates that mere government ownership of property involved in a tort does not mean that the person using the government property is necessarily a government employee. *Pattno v. United*

*States,* 311 F.2d 604 (10th Cir.1962), *cert. denied* 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412; *Blackwell v. United States,* 321 F.2d 96 (5th Cir.1963); *Gilkey v. United States,* 213 F.Supp. 387 (D.C.Ark.1963).

█ The Court recognizes this assertion as true. However, the facts of the case at bar are readily distinguishable from the cases cited by the government. In *Pattno,* Wyoming Air National Guard officers, not in active federal service and flying planes owned by the U.S. and loaned to the Guard, were found to be state, not federal, employees. *Blackwell* and *Gilkey* also involved members of the National Guard.

Moreover, the Ninth Circuit has repeatedly followed the Restatement (Second) of Agency factors wherein one factor to be considered is whether the employer or the employee supplied the instrumentality. *See e.g., Slagle v. United States,* 612 F.2d 1157 (9th Cir.1980); *United States v. Becker,* 378 F.2d 319 (9th Cir.1967); *Brucker v. United States,* 338 F.2d 427 (9th Cir.1964). While this is only one of the factors to be considered, the government cannot dispute the fact that the government's ownership and lending of the car in this case is one factor that weighs in favor of finding Dann to be a government employee.

### 3. *Was Vehicle Used For a Regular Business Purpose?*

With respect to whether the instrumentality was used for a regular business purpose, the Restatement (Second) of Agency states:

(h) whether or not the work is part of the regular business of the employer

RESTATEMENT (SECOND) OF AGENCY § 220(2)(h) (1958).

The government argues that househunting is a personal and private enterprise, and is therefore not an activity within the scope of the Veterans Administration's regular business. However, the Veterans Administration's regulations recognize househunt-

ing as an official government purpose. The regulations point out that government vehicles may be used only for official government purposes, 38 CFR 0.735–23(b)(8), and that such vehicles may be used for househunting. Veterans Administration General Regulations, Part 2 MP–1 Part II, Chapter 2, 13h(1) and (2). Given this regulatory language, the Court must conclude that the Veterans Administration has classified househunting as an official government purpose.[4]

The Veterans Administration made the government vehicle available to Ziegler and Dann so that they could search for a home in the Bay Area. Dr. Goldsmith had been advised that Dann's children would probably live with Ziegler and Dann and would be involved in the househunting. The Court recognizes that showing a home to one's children is a regular activity in the course of househunting.

At the time of the accident, Dann was driving her daughter to see a house that Ziegler and Dann were interested in buying. Thus, at the time the accident occurred, the government car was being used for precisely the purpose for which it had been issued.

The Court is cognizant of the fact that in *Proprietors Insurance Co. v. United States,* 688 F.2d 687 (9th Cir.1982), the Ninth Circuit held that a civilian security guard driving a government truck was not a federal employee for purposes of the FTCA.

However, the Court believes that the instant case is distinguishable from *Proprietors Insurance* wherein the Court looked to the purpose of the National Guard Technicians Act and its relation to the FTCA. Because there is no specific Act relevant to Dann's position, the Court, in this case, looks to the purpose of the FTCA itself.

In *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1954), the Supreme Court reviewed the legislative history and purpose of the FTCA. The Court noted that the Act was passed "after nearly

---

4. The Court's conclusion is further bolstered by Dr. Goldsmith's statement that the government-owned motor vehicle was issued for "the official purpose of 'house-hunting.'" (Declaration of Ralph S. Goldsmith, M.D. Filed September 30, 1982.)

thirty years of Congressional consideration." *Id.* 346 U.S. at 24, 73 S.Ct. at 962. In a footnote the *Dalehite* Court described the impetus that gave rise to passage of the Act.

> From the Committee hearings we learn that the previous 85 years had "witnessed a steady encroachment upon the originally unbroken domain of sovereign immunity from legal process for the delicts of its agents. Yet a large and highly important area remains in which no satisfactory remedy has been provided for the wrongs of Government officers or employees, the ordinary 'common law' type of tort, such as personal injury or property damage caused by the negligent operation of an automobile." *Id.* 346 U.S. at 25 n. 10 [73 S.Ct. at 962 n. 10], quoting Hearings before House Committee of Judiciary, 77th Cong., 2d Sess., on HR 5373 and HR 6463, P. 24.

Thus, the FTCA was passed for the express purpose of holding the government liable for the torts of its employees. The Court notes that the language used in the FTCA definition of employee was drafted to cover a broad range of persons. 28 U.S.C. § 2671. By including persons acting on behalf of a federal agency temporarily and without compensation, the definition encompasses people who are not technically employees of the government.

Commenting on the definition of "employee" contained in § 2671, the Second Circuit Court of Appeals noted that:

> This definition is not without boundaries, ... [citations omitted] but quite clearly the statutory language was drafted to have an expansive reach, ... [citations omitted] and should be applied with an eye to general agency law rather than to the formalities of employment contracts.

*Witt v. United States,* 462 F.2d 1261, 1263 (2nd Cir.1972).

In view of the language and purpose of the FTCA, and applying the agency analysis required by Ninth Circuit precedent, the Court finds that Rue W. Dann can be considered an employee of the government for purposes of the FTCA. The Veterans Ad-

ministration voluntarily provided the instrumentality, had the right to control Dann and her use of the government car, and at the time of the accident, Dann was using the car for the official government purpose.

For the reasons stated above, and for good cause appearing, the Court reaffirms its earlier ruling that Rue W. Dann was a government employee within the meaning of the Federal Tort Claims Act.

IT IS SO ORDERED.