Carmon D. WALKER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CIV–80–155–D.

United States District Court, W.D. Oklahoma.

June 17, 1982.

Kent F. Frates and Marilyn Kay Schrameck, Oklahoma City, Okl., for plaintiff.

Larry D. Patton, U.S. Atty. by David Lee, Asst. U.S. Atty., Oklahoma City, Okl., for defendant.

## OPINION

DAUGHERTY, District Judge.

This case was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* (the Act). The Plaintiff is a retired military serviceman who, on August 1, 1973, was eligible under the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) for medical services at the Defendant's Tinker Air Force Base Hospital (Hospital). On that date, the Plaintiff was admitted into said

Hospital, and a right ureteral lithotomy was performed on the Plaintiff by Dr. Donald B. Halverstadt, the surgeon of record. Dr. Halverstadt was then a Board Certified urologist and a civilian consultant to the Hospital. He was a non-military person. During the operation, Dr. Halverstadt made an incision in the Plaintiff's right ureter and removed a "kidney stone."

The Plaintiff alleges, and the Defendant denies, (1) that Dr. Halverstadt negligently used a length of nonabsorbable suture in the closure of the incision and that said nonabsorbable material later caused the formation of calculi in the right ureter of the Plaintiff, causing him pain and medical expense, (2) that at the time of the operation, Dr. Halverstadt was an "employee of the Government" within the meaning of that term as defined in 28 U.S.C. § 2671, and (3) that staff members of the Hospital negligently failed to object to the use of the nonabsorbable suture by Dr. Halverstadt. Defendant's denial as to (2) above is based on the proposition that Dr. Halverstadt was not an employee of Defendant regarding said operation but was an independent contractor. Later, on May 17, 1979, a kidney stone with a length of blue monofilament nonabsorbable suture embedded in it was removed from his right ureter by Dr. Wendell M. Long at South Community Hospital in Oklahoma City. The Court has conducted a non-jury trial herein.

The Court finds and concludes as follows:

## THE INDEPENDENT CONTRACTOR DEFENSE

Jurisdiction of this Court over claims brought under the Federal Tort Claims Act is based on 28 U.S.C. § 1346(b), which provides, in pertinent part:

> Subject to the provisions of Chapter 171 [§ 2671 et seq.] of this title, the district courts ... shall have ... jurisdiction of civil actions on claims against the United States, for money damages ... for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

In Section 2671, the term "employee of the Government" is defined to include employees of any "federal agency," which term is in turn defined not to include "any contractor with the United States." Although the general rule of liability, 28 U.S.C. § 2674, is coterminous with the liability of private persons, Section 1346(b) makes it clear that this general rule of liability is subject to the provisions of Chapter 171, including the definitions in Section 2671. The Act is a limited waiver of the sovereign immunity of the United States, and as the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the contractor exception, to such waiver. *United States v. Orleans,* 425 U.S. 807, at 813–814, 96 S.Ct. 1971, at 1975–1976, 48 L.Ed.2d 390 (1976). Further, the meaning of the term "contractor" in Section 2671 has been interpreted by the federal courts to be the same as the common law definition of "independent contractor." *Logue v. United States,* 412 U.S. 521, at 527–528, 93 S.Ct. 2215, at 2219, 37 L.Ed.2d 121 (1973). However, the independent contractor defense to a claim under the Act is not subject to the common law exceptions to that defense, as the statutory limited waiver of immunity does not contemplate such exceptions. The Supreme Court stated, in this connection, in *Logue, supra,* 412 U.S. at 528, 93 S.Ct. at 2220;

> Petitioners cite the commentary to the Restatement (Second) of Torts § 409 (1965), to the effect that the common-law distinction that shields the employer from liability or injuries caused to another by the negligent act of a contractor or his servant is subject to so many exceptions that it is the general rule "only in the sense that it is applied where no good reason is found for departing from it." Congress, of course, could have left the determination as to whose negligence the

Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this Congressional choice leaves the Court free to look to the law of torts and agency to define "contractor," it does not leave them free to abrogate the exemption that the Act provides.

The Court concludes from this discussion that if Dr. Halverstadt was an "independent contractor" at the time of the operation involved herein, then the Government is not liable for any negligence on his part or the part of his servants.

A critical element in distinguishing a federal agency from a contractor is whether the Government has the power "to control the detailed physical performance of the contractor." *United States v. Orleans, supra,* 425 U.S. at 814, 96 S.Ct. at 1976; *Logue v. United States, supra,* 412 U.S. at 528, 93 S.Ct. at 2220. The "control" test applies even to physicians and other professionals. *Wood v. Standard Products, Inc.,* 671 F.2d 825, at 830–832 (Fourth Cir.1982). In applying this test, the Supreme Court has refused to be persuaded that a contractor is a federal employee or agency simply because he has assumed "obligations and responsibilities virtually identical to those of a salaried Federal employee ... [and has breached] a specific statutory duty owed by the salaried employee to a specific class of persons" which includes the Plaintiff. *Logue v. United States, supra,* 412 U.S. at 531, 93 S.Ct. at 2221. In *Craghead v. United States,* 423 F.2d 664 (Tenth Cir.1970), the Plaintiff asserted that the Government had sufficient control over the work site by virtue of its duty to inspect, but the Court held that "the pertinent control [of the work site was that] which the contractors exercised over the ladder and scaffold in

question here." *Id.,* 423 F.2d at 666. Further, in *Norton v. Murphy,* 661 F.2d 882 (Tenth Cir.1981), the Court indicated that there are many factors to be considered regarding this test, including (1) the intent of the parties as manifested in their agreement, (2) whether the United States retains only the right to ensure that proper results are obtained or also has the power to control the manner and method of obtaining the result, (3) whether the tools and vehicles of the United States or the contractor are used, (4) whether, under the contract, the contractor is required to provide his own liability insurance, (5) whether the contractor pays self-employment Social Security tax, or the United States withholds income tax from payments to him, (6) whether federal regulations prohibit federal employees from performing such contracts, (7) whether the contractor has the authority to subcontract work to others. 661 F.2d at 884–885. Further, the court in *Norton* held that, while the federal agency's right to select a contractor and negotiate the contract with him without competitive bidding is a factor, it is but one of many tests to be considered. 661 F.2d at 885. As to physicians, the court in *Wood v. Standard Products, Inc., supra,* at 832, held:

> We think these cases make it clear that the real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity.

Applying these rules, the Court finds as follows: Dr. Halverstadt, a specialist in urology at the time of his treatment of the Plaintiff, was under a contract with the Defendant for consulting urology services at the Hospital, and the parties to that contract intended that he perform said services on an independent basis. The Defendant had no such specialist on regular or military service at the Hospital. The agents of the Defendant were authorized by Air Force regulations to enter into such contract.[1] Under these regulations, Dr.

---

1. 32 C.F.R. § 880.12(d) directs the reader to refer to Air Force Regulation (AFR) 168–9 regarding authorized medical treatment from ci-

vilian sources for retired Air Force members. AFR No. 168–9, § 4–8(c) authorizes obtaining professional services from civilian sources, on

Halverstadt was required to use Air Force facilities and tools wherever possible, in order to reduce costs, but he was free where necessary to order supplemental services and materials from civilian sources at Air Force expense. There was no limitation on Dr. Halverstadt's authority to select and employ physician assistants, and in fact he was assisted by two residents in urology who were under his supervision at the University of Oklahoma School of Medicine. These residents, being under the sole supervision of Dr. Halverstadt, could perform any duties assigned to them by him. Dr. Halverstadt billed his time to the Hospital on an agreed basis and handled his own Social Security and income tax payments. Any agreements which the residents had for working in surgery at the Hospital were entirely with Dr. Halverstadt, not with the Hospital, and any payment to said residents, pursuant to any such agreements, would have come from Dr. Halverstadt, not from the Hospital. Dr. Halverstadt had exclusive control of the pertinent work area, that is, the operating room, at the time of the operation involved herein. He had exclusive control over the manner and method in which he delivered urological services, the "primary activity contracted for," to patients of the Hospital, and, in particular, he had sole control over the manner in which the surgery was performed on the Plaintiff. He alone made the decision to operate on and incise the ureter of the Plaintiff. Although a Hospital staff physician, Dr. Douglas M. Duncan, an orthopedic surgeon, was present in the operating room during the surgery on the Plaintiff, he had no authority to control the detailed physical performance of the surgery by Dr. Halverstadt and performed no services of any significance. The only control and supervision of Dr. Halverstadt by the Hospital related to the location of the surgery and the requirements that Hospital facilities and personnel were to be used where practical and that all urological services were to be provided by Dr. Halverstadt. In sum, the Court finds that Dr. Halverstadt was an independent contractor, not an employee, of the Hospital.

■ The Court finds, however, that there was a contract between the Plaintiff and the Hospital for the services which the Hospital procured for the Plaintiff through Dr. Halverstadt. This contract was not created at the time the Plaintiff presented himself to the Base Hospital for treatment but at the time the Plaintiff entered the military and thereby became eligible for all benefits provided to servicemen, including the said treatment. The Court concludes that these facts would bring the Plaintiff within an exception to the independent contractor defense by reason of said contractual duty under Oklahoma law. *Minnetonka Oil Co. v. Haviland,* 55 Okl. 43, 155 P. 217 (1916). Contractual duties may not be delegated to an independent contractor under the common law. *Rayonier, Inc. v. Bryan,* 249 F.2d 405 (Fifth Cir.1957) (following *Minnetonka Oil Co., supra*). This exception to the independent contractor defense under Oklahoma law, together with a long list of other exceptions, was recited in *dictum* by this Court in *Town of Freedom v. Muskogee Bridge Co.,* 466 F.Supp. 75, at 79 (W.D.Okl. 1978).

either an inpatient or outpatient basis, to be performed in the uniformed services facility whenever feasible but, when not feasible, to be performed in civilian facilities, provided that the patients remain under the jurisdiction of the facility or station commander. 32 C.F.R., Part 880, is derived from AFR 168–10, March 31, 1980, which supersedes AFR 168–10, October 16, 1968, which appears to have been in effect at the time of the Plaintiff's surgery and which, at Section D–14(a), provides that civilian services may be obtained for retired members to be performed in an Air Force medical facility unless it is more practical to send eligible patients to civilian facilities, where they would remain under the jurisdiction of the Air Force facility; this regulation further provides:

b. Supplemental services may include but are not restricted to those of a civilian physician, surgeon, specialist consultant, . . . while the individual is hospitalized in, or an out-patient of, an Air Force medical facility. Supplemental materials ordered by the attending physician which are customarily provided and charged for by the hospital, such as whole blood and blood plasma, are authorized from civilian sources at Air Force expense.

■■ But this Court knows of no case, and has been cited to none, which holds that the limited waiver of sovereign immunity in the Federal Tort Claims Act extends to any of the exceptions to the independent contractor defense recognized by State law. The Act requires "clear relinquishment of sovereign immunity to give jurisdiction for tort actions." *Dalehite v. United States*, 346 U.S. 15, at 31, 73 S.Ct. 956 at 965, 97 L.Ed.2d 1427 (1953).[2] The immunity waiver does not extend to cases where the United States has a statutory duty to the Plaintiff which it has delegated to a contractor who negligently violates it. *Logue v. United States, supra.* It does not extend to the common law exception which holds one liable for his contractor's negligent failure to exercise reasonable care in the course of inherently dangerous work, on a "non-delegable duty" theory. *Flynn v. United States*, 631 F.2d 678, at 681 (Tenth Cir. 1980). Nor may the United States be held liable on any absolute liability theory. *Id.* Although the Court knows of no decision on this particular issue,[3] the Court concludes that the Oklahoma rule of non-delegability of a contractual duty is not applicable herein, as the waiver of immunity granted by the Act does not extend this far. Hence, the Court's determination that Dr. Halverstadt was a "contractor" rather than an "employee" in 1973 ends the inquiry into the liability of the United States for his alleged negligence.

■ Under the Court's findings as to the nature of the Plaintiff's contract with the Defendant, the Court can find no factual basis for a theory of agency by estoppel or apparent authority as asserted by Plaintiff. According to the evidence, the Hospital made no representation to the Plaintiff as to whether Dr. Halverstadt was an employee or contractor, and the Plaintiff in no way relied on Dr. Halverstadt's status as an employee. Further, the Court concludes, on the basis of the cases cited above, that the waiver of immunity does not extend to such theories where they are advanced as exceptions to the independent contractor defense.[4]

Finally, the Plaintiff does not assert that the Hospital was negligent in contracting its urological services to Dr. Halverstadt. In 1973, Dr. Halverstadt was an eminent, Board Certified, experienced urologist.

■ Questions of burden of proof are substantive issues to be resolved according to State law. *See, e.g., Currie v. United States*, 312 F.2d 1 (Fourth Cir.1963). Under Oklahoma law, the independent contractor defense is not an affirmative defense but may be raised under a general denial. *Texas Pipe Line Co. v. Willis*, 172 Okl. 148, 45 P.2d 138 (1935). The Plaintiff has failed to sustain his burden to prove that Dr. Halverstadt was an "employee of the Government" under 28 U.S.C. § 1346(b) at the time he performed the allegedly negligent operation.

## NEGLIGENCE OF THE HOSPITAL STAFF

■ As indicated above, the Court finds that if any negligence was committed during the 1973 operation at Tinker Air Force Base Hospital, it would have been committed by Dr. Halverstadt or the residents

---

2. *E.g.*, sovereign immunity has not been clearly relinquished where a soldier sues the United States for negligence committed in the line of duty, *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), or, *a fortiori*, where a soldier sues an Army medical surgeon for negligence in the line of duty. *Bailey v. DeQuevedo*, 375 F.2d 72 (Third Cir.1967).

3. In *Harris v. United States*, 424 F.Supp. 627 (D.Mass.1976), tenants in an apartment building owned by the United States Department of Housing and Urban Development (HUD) sued the United States in tort for injuries resulting from the negligent maintenance of a stairway. HUD's defense was that the negligence was committed by the Roxbury Community Housing Corp., an "Area Management Broker" (AMB), to which HUD had contracted the management responsibility for the building. The Court held that the AMB was not an employee under the Act, citing *United States v. Orleans, supra.* The Court did not discuss HUD's contractual duty as a landlord to the Plaintiffs.

4. Certainly, the Plaintiff does not and cannot claim liability on the basis of fraud or misrepresentation. 28 U.S.C. § 2680(h).

whom he brought with him. Specifically, the Court determines from the evidence presented that no acts of negligence have been shown to have been committed by Dr. Duncan or any of the operating room personnel employed by the Hospital. The Court finds that neither Dr. Duncan nor any of the other Hospital personnel in the operating room knew, or by training should have known, whether the use of a nonabsorbable suture in the closure of the ureter might cause the formation of kidney stones by reason of contact between the suture and the urine stream. Hence, none of them could have acted negligently by failing to object to Dr. Halverstadt's alleged use of such suture in this manner in Plaintiff's operation.

As the Court finds from the evidence that no acts of negligence were committed by Dr. Duncan or the Hospital operating room personnel, it is unnecessary to deal with the loaned servant doctrine or the common purpose doctrine discussed in *Turney v. Anspaugh,* 581 P.2d 1301 (Okl.1978). Moreover, as the Court finds and concludes that Dr. Halverstadt and his residents were independent contractors with reference to Plaintiff's operation performed by Dr. Halverstadt as surgeon of record on August 1, 1973, it is also unnecessary to determine whether he or they in fact committed the act of negligence in the performance of the operation as claimed herein by Plaintiff.

Judgment should be entered herein for the Defendant.

IT IS SO ORDERED this 17th day of June, 1982.