William J. BRUCKER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18828.

United States Court of Appeals Ninth Circuit.

Nov. 18, 1964.

Rehearing Denied Jan. 19, 1965.

T. N. Petersen, Merced, Cal., for appellant.

John W. Douglas, Asst. Atty. Gen., Morton Hollander, David L. Rose, Attys., Dept. of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG, BROWNING and DUNIWAY, Circuit Judges.

BROWNING, Circuit Judge:

The Castle Air Force Base Aero Club is an instrumentality of the United States, organized and operated under the auspices of the Air Force[1] to give authorized personnel an opportunity to fly for recreation and the development of aeronautical skills.

Sgt. Brucker, a member of the Club, was injured in the crash of a Club plane flown by Lt. Hammack, another Club member. Sgt. Brucker sued the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b). The district court dismissed the action after trial.

█ 1. The district court found that the accident resulted from Lt. Hammack's negligence, but that "Lt. Hammack was not acting as an agent of the Club and hence not an agent of the Government at the time of the flight in question." The court concluded that the United States had not consented to be sued for Lt. Hammack's negligent acts.[2] Sgt. Brucker attacks the quoted finding as clearly erroneous.

██ "This is," as the district court said, "a difficult case." There was substantial proof in support of Sgt. Brucker's side of the disputed issue. But there was also substantial support for the district court's finding, and "on the entire evidence" we are not "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).[3]

Sgt. Brucker's position is that Lt. Hammack was a servant of the Club in

1. United States v. Hainline, 315 F.2d 153, 156 (10th Cir. 1963). Cases involving similar agencies are collected in Rizzuto v. United States, 298 F.2d 748, 749 (10th Cir. 1961).

2. By the terms of the Federal Tort Claims Act, the United States consents to be sued for injuries caused by acts of an "employee of the Government". 28 U.S. C.A. § 1346(b). Whether a given person is an "employee of the Government" within the meaning of the Act is, of course, a question of federal law. United States v. Hainline, 315 F.2d 153, 156 (10th Cir. 1963). The word "employee" is to be read as having the same general meaning in the Act as the term "servant" has in the body of rules relating to the doctrine of *respondeat superior* (see Restatement, (Second) Agency § 220, comment g (1958); see also, Strangi v. United States, 211 F.2d 305, 307–308 (5th Cir. 1954); Thomas v. United States, 204 F.Supp. 896 (D.Vt.1962)), since "[t]he policy of the act is to fix Government liability under the doctrine of *respondeat superior* * * *." United States v. Holcombe, 277 F.2d 143, 146 (4th Cir. 1960); see also, Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). In the disputed finding the district court used the term "agent" in this same sense.

3. Weighing the evidence in the light of the relevant criteria to determine whether a master-servant relationship existed between Lt. Hammack and the Club, and hence the United States, is an exercise of the fact-finding function. Restatement (Second), Agency § 220 at comment c.

that he was a "check pilot," and also, at least ostensibly, a "flight instructor."

The Air Force directive under which the Club was organized provided that "appropriate operational and administrative procedures" should be "established and followed to insure maximum safety in flight." Air Force Reg. No. 34–14, par. 6a. Among the regulations adopted by the Club were two relating to "check rides" and "authorized flight instructors." The first provided that in certain circumstances pilots were required to complete a "check flight" with a "check pilot" before flying Club aircraft, and set out the qualifications of a check pilot.[4] The second regulation provided that only persons certified by the Civil Aeronautics Administration as flight instructors[5] were authorized to give flight instruction in Club aircraft. Lists of locally available check pilots and flying instructors were maintained at Club headquarters.

A member wishing to take flight instruction in a Club plane selected a flight instructor from among those listed by the Club, and made his own arrangements directly with that instructor. The member usually paid the instructor three dollars an hour. Apparently the same procedure was followed in securing the services of a check pilot for a check flight in a Club plane. Neither check pilots nor flight instructors had contractual arrangements with the Club or received compensation from the Club.

Lt. Hammack was a qualified check pilot. He was not a flying instructor, and did not appear on the Club's roster as such. However, Sgt. Brucker contends that the Club president, Sgt. Graves, held Lt. Hammack out to be a flight instructor by arranging on an earlier occasion to have Lt. Hammack take Sgt. Brucker on an instructional flight. The Club by-laws provided that

the president of the Club could "make and enforce decisions regarding the suitability of all equipment and the qualifications of all members for every type of flight operation," and it is conceded that Sgt. Graves could approve or disapprove any flight and designate a particular flight instructor or check pilot to fly with a particular member.

On the day of the accident Sgt. Brucker went to the field to arrange a supervised solo with Sgt. Graves (who was an authorized flight instructor as well as Club president), but Sgt. Graves was not there. Sgt. Brucker asked Lt. Hammack to fly with him, and the Lieutenant agreed to do so. Sgt. Brucker rented a Club plane, and he and Lt. Hammack took off. The court found (and the finding is not contested) that Sgt. Brucker impliedly promised to pay Lt. Hammack the customary three dollar hourly fee.

Thus, in accordance with the usual practice, Sgt. Brucker himself selected Lt. Hammack, made his own arrangements with Lt. Hammack, and agreed to compensate Lt. Hammack. Although the nature of Lt. Hammack's employment as a check pilot (or flying instructor) was such that he was subject to little if any control by anyone in the performance of his task, broad questions of the time, place, and duration of the flight were determined by Sgt. Brucker.

On the other hand, the Club had no contractual arrangement with Lt. Hammack, did not compensate him, and neither possessed nor exercised any power to control his conduct of the flight. The district court could reasonably view the listing of available check pilots and flying instructors as a service provided by the Club for the convenience of members, rather than evidence of a master-servant relationship between the Club and the listed pilots. The Club regula-

---

4. Par. 7 of Club Reg. No. 3–6 reads:
   Check pilots are defined as: 1. All Club recognized flight instructors current in the type of aircraft to be flown, and 2. others who meet the following requirements:
   A. Private pilots license or higher.
   B. Minimum of 100 hours total time.
   C. Be checked by a designated instructor in the aircraft in which he will conduct check flights.
   D. Be approved by the Board of Governors.

5. 14 C.F.R. § 61.171 to .177.

tions relating to check pilots and flying instructors, and the by-law provision empowering the president to approve or disapprove particular flight arrangements, could be regarded not as manifestations of a control by the Club over check pilots and flying instructors as servants, but rather as reflecting the Club's control over Club planes and the activities of Club members in the interest of air safety.

On this record the district court could reasonably find that Lt. Hammack was not the servant of the Club. And liability could not be imposed upon the United States for acts of persons not its servants simply because the government encouraged the activity and derived benefit from it. United States v. Hainline, 315 F.2d 153, 155 (10th Cir. 1963); Wright, The Federal Tort Claims Act 51 (1957).

2. Sgt. Brucker argues that even if Lt. Hammack was not a servant of the Club, Sgt. Graves was,[6] and that Sgt. Graves negligently authorized Lt. Hammack to operate the plane.

The government contends that this issue may not be raised on appeal because it was not included in the recitation of issues in the pretrial order. But the district court passed upon the issue, expressly finding that Sgt. Graves had not been negligent; and "[e]ven if the pretrial order must be read as narrowly as appellee desires to read it, it must be considered to have been amended by the trial court's findings." American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., 292 F.2d 640, 643 (9th Cir. 1961).

The district court's finding that Sgt. Graves was not negligent is not clearly erroneous. Although not a qualified flight instructor, Lt. Hammack was a licensed pilot, fully competent to fly the plane with Sgt. Brucker as a passenger. The court could conclude that Sgt. Graves had done no more than impliedly authorize just such a flight.

Affirmed.

6. The district court made no finding as to whether Sgt. Graves was a servant of the Club.