Irving L. NORTON, a/k/a I. L. Norton,
and Dana Norton,
Plaintiffs-Appellants,

v.

Edmond L. MURPHY and the United
States of America,
Defendants-Appellees.

No. 81–1652.

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 21, 1981.

Decided Oct. 20, 1981.

Clifford C. Fossum of Dilts, Dyer, Fossum, & Hatter, P.C., Cortez, Colo., for plaintiffs-appellants.

Joseph F. Dolan, U. S. Atty., and James W. Winchester, Asst. U. S. Atty., Denver, Colo., for defendants-appellees.

Before HOLLOWAY, McWILLIAMS, and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The issue here to be resolved is whether Edmond Murphy was an employee of the United States within the meaning of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 (1976).[1] The trial court

---

1. 28 U.S.C. § 1346(b) provides that the district courts shall have exclusive jurisdiction of civil actions on claims against the United States for personal injury or property damages caused by

the tortious conduct of government employees acting within the scope of their employment. 28 U.S.C. § 2671, the definitional section of the Federal Tort Claims Act, defines "employee of

held that Murphy was not an employee of the United States, but that he was an independent contractor. On this basis, the trial court entered summary judgment in favor of the United States.

Murphy was under contract to deliver mail for the United States near Pleasant View, in Montezuma County, State of Colorado. He delivered mail over a route which was approximately nine miles long, beginning and ending in Pleasant View. While thus delivering mail in his privately owned vehicle, Murphy struck Irving Norton, a pedestrian, causing personal injury.

Norton and his wife brought the instant proceeding in the United States District Court for the District of Colorado under the Federal Tort Claims Act, alleging damages as a result of Murphy's negligence and naming as defendants Murphy, the United States Postal Service and the United States. The Postal Service was later dismissed from the case. By answer, Murphy denied negligence, but admitted that he was an employee of the United States. By its answer, the United States denied that Murphy was its employee and alleged that Murphy was an independent contractor with the United States.

The United States later moved for summary judgment, attaching to the motion an affidavit which incorporated therein Murphy's contract with the United States. The trial court granted the motion for summary judgment, and dismissed, with prejudice, the Nortons' claim against the United States. The trial court dismissed the Nortons' claim against Murphy without prejudice to the Nortons' right to pursue their claim against Murphy in a court of competent jurisdiction.[2] In so doing, the trial court held that there was no genuine issue of material fact and that the United States was not liable for Murphy's negligence since Murphy was not an employee of the

United States, but an independent contractor. The trial court's Opinion and Order appears as *Norton v. Murphy*, 513 F.Supp. 944 (D.Colo.1981). Nortons now appeal the dismissal of their claim against the United States. We affirm.

On August 2, 1969, Murphy entered into a so-called Star Route Contract with the United States Post Office Department for the carrying of mail on Star Route 81366 out of the Pleasant View Post Office. Murphy bid for that particular route and he was awarded the contract on the basis of his bid. The contract expired by its own terms in 1972, and was then renewed for a period of four years by the United States Postal Service, successor to the Post Office Department, on a negotiated basis, *i. e.*, with no competitive bidding. In 1976, the contract was renewed, at a slightly higher rate of payment, for a period of two years. In 1978, the contract was renewed for a period of four years. This latter contract was in effect when the accident involving Murphy and Norton occurred. The 1976 and 1978 renewals made use of a *new* renewal contract form, referred to as a "Transportation Services Contract." The issue presented is whether under the current Transportation Services Contract Murphy is an employee of the United States.

A person delivering United States mail pursuant to a Star Route Contract with the *old* Post Office Department has been held not to be an employee of the United States as that term is defined in the Federal Tort Claims Act. *Fisher v. United States*, 356 F.2d 706 (6th Cir.), *cert. denied*, 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966); *Thomas v. United States*, 204 F.Supp. 896 (D.Vt.1962); and *Smick v. United States*, 181 F.Supp. 149 (D.Nev.1960).

In *Tunder v. United States*, 522 F.2d 913 (10th Cir. 1975), we held that a person delivering United States mail under a Star

the government" as any officer or employee of any federal agency. This broad statement is qualified, however, by the provision that the term federal agency "does not include any contractor with the United States."

2. Without the United States as a party, the federal court was without jurisdiction to adjudicate any claims of the plaintiffs against the defendant Murphy, because there was no diversity of citizenship between the plaintiffs and the alleged tortfeasor.

Route Contract entered into with the *old* Post Office Department was an independent contractor, and not an employee of the United States, notwithstanding the fact that, by virtue of the Postal Reorganization Act of 1970, the Post Office Department had been succeeded by the *new* Postal Service. In *Tunder*, we stated that a Star Route Contract entered into by the Post Office Department was binding on its successor, the Postal Service, and that the latter must honor the contract. In *Tunder*, however, we did not have to decide the issue presented by this case, *i. e.*, whether the holder of a negotiated renewal contract with the *new* Postal Service is in the same position as one having a Star Route Contract with the *old* Post Office Department.

In granting the motion of the United States for summary judgment, the trial court had before it the affidavit of one Leonard O'Hayre, the contracting officer of the United States Postal Service for air taxi and surface mail contracts originating in the States of Colorado, New Mexico, and Wyoming. Attached to O'Hayre's affidavit was a copy of Murphy's original Star Route Contract with the *old* Post Office Department, as well as copies of all renewal contracts with the *new* Postal Service. Also, the deposition of Murphy was a part of the record before the trial judge when he granted the motion of the United States for summary judgment. In our view, the case was ripe for summary judgment, and, under the circumstances, the trial judge did not err when he entered judgment for the United States.

The *old* Star Route Contract and the *new* Transportation Services Contract are not identical, but they are nonetheless sufficiently similar to the end that we are disinclined to bring the instant case out from under the rule of *Tunder*. Both contracts refer to the mail carrier as a "contractor," and not as an "employee" of the United States. The intent of the parties, as manifested in their agreement, is, however, just one of many factors to be considered in resolving the sometimes difficult question of whether a party is an employee, or an independent contractor.

The cases indicate that perhaps the main distinguishing factor between an employee, on the one hand, and an independent contractor, on the other, is that of the degree of control over the actual performance of the services called for by the contract. There is generally no detailed control by a supervisory authority in the case of an independent contractor. *Thomas v. United States*, 204 F.Supp. 896, 898 (D.Vt.1962) and *Smick v. United States*, 181 F.Supp. 149 (D.Nev.1960).

In *Thomas*, the court noted that although the Star Route Contract there involved contained a number of provisions indicating the right of the United States to insure that the proper results were obtained, such provisions did not amount to a control of the manner and method in which the actual delivery of mail was made or of the conduct of the carrier along the route. 204 F.Supp. at 898. Similarly, in *Smick*, the district court noted that however detailed the Star Route Contract was in regard to the work contracted for, it did not provide for such "subsequent control of that work" as to create a master-servant relationship. 181 F.Supp. at 151. We think these same observations can be made concerning the Transportation Services Contract here under consideration. While the contract is in considerable detail as to the work to be performed, it does not provide for detailed supervision or control of the carrier as he proceeds along his route. Indeed, the very length and detail of the contract entered into by the United States and Murphy suggests, to us, an independent contractor relationship between the parties. To us it is doubtful that a master-servant relationship, where the master tells the servant what to do and when to do it, would require a contract of the type here involved.

Other factors which enter into our resolution of the matter are: (1) Murphy uses his own vehicle in delivering the mail; (2) under the contract, Murphy is required to provide his own automobile liability insurance; (3) Murphy pays self-employment Social Security tax, and there is no employee

withholding tax on the monthly contract payments made by the United States to Murphy; (4) Postal Service regulations prohibit the award of any contract of the type here involved to *employees* of the Postal Service, and; (5) Murphy has the authority to subcontract his work to others. Without belaboring the matter, we believe the trial court was, under the circumstances of this case, justified in entering summary judgment for the United States.

The appellants seek to escape the rule of *Tunder* by emphasizing that a mail carrier under the *old* Star Route Contracts was awarded his contract on the basis of competitive bidding, and that Murphy's renewal contracts were negotiated, and not bid for.[3] It is true that in *Smick v. United States, supra,* for example, the court noted that the United States, under the Star Route Contracts, had no right to select the mail carrier, but had to award the contract to the lowest bidder, whoever it might be. As indicated, however, the right of selection is but one of many tests to be considered in determining whether a party is an employee or an independent contractor. The court in *Smick* did not turn the entire case on the right-of-selection test, but also based its holding on the right-to-control factor. In any event, we do not believe that merely because a contract is negotiated, the relationship created is *necessarily* one of master-servant.

All things considered, we do not feel there is sufficient difference between the *old* Star Route Contract and the *new* Transportation Services Contract to warrant a departure from the rule of *Tunder*.

Judgment affirmed.

---

**3.** Appellee states in its brief that appellants have confused negotiated contracts with the rights of the Postal Service to renew, on a negotiated basis, contracts originally awarded on a competitive basis. Appellee claims that a *new* Transportation Services Contract must be awarded to the lowest bidder under Postal Service Regulations. Because of our disposition of the case through a balancing of the various factors, and our conclusion that the negotiation of a contract does not of itself create an employer-employee relationship, we need not address this particular matter.