Billy Ray **DUNCAN**

v.

**UNITED STATES of America.**

Maxine **SMART**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 77–3023, 79–2024.**

United States District Court,
E.D. Louisiana.

Jan. 27, 1983.

New Orleans, La., for plaintiff, Maxine Smart.

Ronald A. Fonseca, Asst. U.S. Atty., E.D. La., New Orleans, La., for defendant, United States.

## MEMORANDUM OPINION

HEEBE, Chief Judge:

This action was brought by plaintiffs Billy Ray Duncan and Maxine Smart for damages against the United States of America, pursuant to 28 U.S.C. Section 1346(b) and 28 U.S.C. Sections 2671 et seq. Jurisdiction is based on these same provisions, otherwise known as the Federal Tort Claims Act. Plaintiffs claim they are entitled to damages arising from a multivehicle auto accident in which a truck carrying U.S. mail, rear-ended two vehicles in which plaintiffs were passengers.

The focus of this suit and the Court's findings is whether Jimmie Jordan, the driver of the truck, and his employer, Denver Martin, are employees of the United States within the meaning of that term as it appears in the Federal Tort Claims Act, 28 U.S.C. Section 2671 and 1346(b) thus entitling Duncan and Smart to sue the United States under the theory of *respondeat superior*.

This Court, having heard the testimony at trial and having considered the evidence and the memoranda submitted by the parties, now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On October 28, 1976, Jimmie R. Jordan was involved in an automobile accident, on Interstate Highway 10 in New Orleans, Louisiana. Jordan was driving a 1972 Chevrolet truck owned by Denver Martin. The truck was being used by Martin to pick up and deliver mail pursuant to a transportation service contract made with the U.S. Postal Service on May 7, 1976.

2. The contract entered into between Denver Martin and the U.S. Postal Service required Martin to furnish one van-type

Frederick J. Gisevius, Jr., and B.R. Malbrough, Law Offices of Frederick J. Gisevius, Jr., New Orleans, La., for plaintiff, Billy Ray Duncan.

Lawrence J. Smith and Michael A. Villa, Law Offices of Levy, Smith & Gennusa,

vehicle to be used to transport U.S. mail from Mobile, Alabama to New Orleans, Louisiana and back. On April 19, 1976, Martin, as lowest bidder, was awarded the contract for a period of three years beginning June 1, 1976, and ending June 30, 1979, at a rate of $38,847.91 per year.

3. Under the terms of the contract, Martin was required to furnish all vehicles and other equipment necessary to transport the mail along the prescribed route, to pay all expenses incurred in performing the service including the expense of operating and maintaining his equipment, and to carry liability insurance on the equipment at his own expense.

4. The contract permitted Martin to subcontract the work or to hire employees at his own expense to do the required work. All employees hired by him were subject to a security background check to insure that the U.S. mail would be entrusted to trustworthy individuals. If a particular person did not pass the security check by the Postal Service, that person might still remain as an employee of the contractor, but could not transport mail under the contract. Martin was responsible for paying the salaries of any employee assigned or hired by him to assist in the performance of the contract. At the time the contract was in effect, Jimmie Jordan was employed as a part-time employee for Denver Martin.

5. The U.S. Postal Service, when paying Martin the monies due him under the contract, did not withhold any sums for Federal Income Tax, Social Security Tax, or any other deductions an employer would be required to withhold from an employee's wages.

6. Martin was not prohibited from engaging in the trucking business for other clients during the existence of his contract with the Postal Service.

7. Both Denver Martin and Jimmie Jordan, Martin's employee driver, were issued identification cards entitled "Contractor Employee".

8. Under the terms of the contract, the Postal Service could terminate Martin's services if the Contracting Officer determined that he had *inter alia* failed to adequately perform the services required, or was convicted of a crime and did not demonstrate that he was rehabilitated and of good moral character. In addition to the government's right to terminate the contract pursuant to these conditions, the contract provided that in the event of termination, the contractor had the right to appeal through the Contracting Officer to the next higher contracting authority within the chain of the U.S. Postal Service.

9. On October 28, 1976, a part-time employee of Denver Martin arrived at the Main Post Office in New Orleans, between the hours of 12:45 a.m. and 1:00 a.m., to drop off and pick up mail pursuant to the terms of the contract. After the mail was loaded on Denver Martin's truck, the truck driver was unable to start the vehicle. The driver called Martin, who was in Alabama, and related his difficulty. Martin immediately contacted Jimmie Jordan, another employee, and proceeded with him to New Orleans in Martin's other truck, with Jordan at the wheel.

10. Upon arriving at the intersection of Interstate 10 and Crowder Boulevard, Martin's truck was involved in a multivehicle accident with a station wagon being driven by Mrs. Lillian Jemison, in which plaintiff Maxine Smart was riding as a guest passenger, and another vehicle in which plaintiff Billy Duncan was riding as a passenger.

## CONCLUSIONS OF LAW

1. The United States, as sovereign, is immune from suit. If it consents to be sued, the terms of the consent define the jurisdiction of the court to entertain the suit. By passage of the Federal Tort Claims Act, Congress waived the government's immunity to suits in tort against government employees. Under the terms of the Act, which incorporates the traditional doctrine of *respondeat superior,* negligence may now be imputed to the United States when it is caused by a federal employee.

2. The Federal Tort Claims Act defines the term "employee of the government" to include:

(1) Officers or employees of any Federal Agency;

(2) Members of the military or naval forces of the United States; and

(3) Persons acting on behalf of a Federal Agency in an official capacity.

28 U.S.C. Section 2671.

3. Whether a mail carrier is a government employee for purposes of the Federal Tort · Claims Act is a matter of federal law based upon federal statutory interpretation. *Thomas v. U.S.,* 204 F.Supp. 896 (E.D.Vt.1962). See also *Feres v. U.S.,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *LeFevere v. U.S.,* 362 F.2d 352 (5th Cir.1966). The burden rests with the plaintiff to prove that under federal law, the negligent person was an employee of the United States. *Hopson v. U.S.,* 136 F.Supp. 804 (W.D.Ark.1956).

4. The Federal Tort Claims Act provides in pertinent part: "Federal Agency . . . does not include any contractor with the United States". Consistent with this provision, is the jurisprudential rule that the United States is not liable for the torts of its independent contractors. *Logue v. U.S.,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Harper v. U.S.,* 515 F.2d 576 (5th Cir.1975). The critical factor in making the distinction between employees of the government and employees of the government's independent contractor is the authority of the government to control the detailed physical performance of the contractor. 412 U.S. at 528, 93 S.Ct. at 2219.

5. The Postal Reorganization Act specifically grants the Postal Service authority to enter into mail transportation contracts with persons as defined in Section 5201(7) of Title 39, U.S.C. Section 5005(a). Section 5201(7) of Title 39 U.S.C. defines "person" as including "any person other than a carrier holding a certificate of public convenience and necessity issued by the Commission". Denver Martin was a person as defined in the act with which the Postal Service could independently contract.

6. Although this case is one of first impression in this jurisdiction, other federal courts, under similar circumstances, have found that a contractor with the Postal Service who agrees to deliver and/or transport mail is an independent contractor and not an employee of the United States. *Tunder v. U.S.,* 522 F.2d 913 (10th Cir.1975); *Smick v. U.S.,* 181 F.Supp. 149 (D.C.Nev. 1960); *Thomas v. U.S.,* 204 F.Supp. 896 (D.Vt.1962); *Fisher v. U.S.,* 356 F.2d 706 (6th Cir.1966).

7. In the recent case of *Norton v. Murphy,* No. 80 HC 678, (D.C.Col. May 7, 1981) (unpublished) the court specifically addressed this issue in circumstances where the defendant of the tort action had entered into a "Star or Water Route contract" to transport and deliver mail in a rural area of Colorado for an agreed compensation over a definite term. Later, after the passage of the Postal Reorganization Act of 1972, defendant continued to transport mail, but under a contract entered into between the United States Postal Service and Murphy. The Court, applying a "control test", i.e. determination of the extent of the government's control over the manner and method in which the actual delivery of the mail was made, or the conduct of the carrier along the route, held that rural carriers of mail under Star Route contracts were independent contractors and not employees. The Court then found as a matter of fact, no real distinction between Star Route contracts and the new contracts entered into pursuant to the Postal Reorganization Act. It reached this conclusion despite the fact that under the latter, the United States Postal Service has the option of selection of the contractors by competitive bidding or a negotiated contract.

8. Responding to plaintiffs' argument that the contract compensation in the *Norton* case could reasonably be inferred to be wages, the Court noted that under the terms of the contract, the carrier was required, among other things, to furnish vehicles and equipment. Accordingly, the compensation was intended to cover the ex-

penses for maintenance and operation of same along with a reasonable return on the investment and profit to compensate him for his work. Those provisions of the contract, which described in detail the service requirements placed by the government on the carrier, did not amount to a control of the manner and method in which the actual delivery of the mail was made, or of his conduct along the route. Instead, they merely indicated the right of the government by these provisions to insure that the mail would be properly transported and delivered in accordance with the intent of the contract.

9. Plaintiffs attempt to distinguish *Norton v. Murphy* on the theory that *Norton* dealt with delivery of mail in a rural area from a substation to rural boxes, whereas the instant case deals with delivery between branch post offices. This is a distinction without a difference. We find no reason to diverge from the 10th Circuit's reasoning that the Postal Service does not exercise sufficient control over the detailed physical operations of its independent contractors so as to justify imputing the negligence of contractors' employees to the government.

10. We have also considered as an alternative theory upon which to base liability, the Louisiana doctrine that a party may owe an injured plaintiff redress for having irresponsibly hired an independent contractor, in this case, Denver Martin. See *Evans v. Allstate Insurance Co.,* 194 So.2d 762 (La.App. 1st Cir.1967). This argument is rooted in the premise upon which the Federal Tort Claims Act is based, i.e. that the government will be liable as a private individual would be liable under state law. Consequently, we have considered the fact that Jimmie Jordan, Martin's employee, had received one speeding ticket, had been in two automobile accidents and had been convicted of carrying a nonregistered firearm at the time of the accident in question, with a view toward deciding whether the Postal Service was negligent in contracting with Martin, Jordan's employer. The Court particularly considered the provisions of the contract which set forth standards of behavior and background for both contractors and their employees. After careful consideration, we have concluded that Congress never intended the Federal Tort Claims Act to reach this far. Although Jordan completed a form for the Postal Service which revealed this information about his background, that form was not submitted until only two weeks before the accident in question. We cannot presume that the Postal Service or even Martin had knowledge of Jordan's background at the time of the granting of the contract, or at the time of the accident. In fact, testimony at trial implied the Postal Service did not. We, therefore, do not reach the merits of the question as to whether this record was so egregious as to constitute the basis for a charge of failing to have exercised due care in hiring.

In the Court's opinion, no legal basis exists upon which to hold the government liable for Jordan's alleged negligence under either the principle of *respondeat superior* or under a theory of "negligent hiring".

Counsel for the government shall prepare a form of judgment in this matter and submit it to opposing counsel and to the Court.