Richard R. LERMA and Olivia
Lerma, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. C–87–20522–WAI.

United States District Court,
N.D. California.

Jan. 25, 1988.

Poel & Kavalaris, San Jose, Cal., for plaintiffs.

Joseph P. Russoniello, U.S. Atty., Judith A. Whetstine, Chief Civ. Div., William F. Murphy, Asst. U.S. Atty., San Jose, Cal., for defendant.

## ORDER

INGRAM, Chief Judge.

The motion of defendant United States to dismiss this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680, for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), came on regularly for hearing on December 7, 1987. Following the hearing, the plaintiffs filed a supplemental memorandum on December 17th, with the permission of the court, in

order to respond to arguments raised in the defendant's reply brief.

Upon consideration of all the papers submitted and the argument of counsel, the motion to dismiss for lack of subject matter jurisdiction is GRANTED, for reasons set forth below.

## I.  BACKGROUND

Plaintiffs Richard L. Lerma and Olivia Lerma sue the United States for injuries resulting from a vehicular accident that occurred on December 2, 1985.  The complaint alleges that on that date, Richard Lerma was driving his motorcycle on Highway 101 when he was struck by a tractor/trailer, owned by Hunt Transportation Corporation (Hunt) and driven by Hunt employee Teresa Marie Prado (Prado).  At the time of the incident, the Hunt vehicle was transporting mail pursuant to a contract by Hunt with the U.S. Postal Service.  Complaint, ¶ IV (filed July 30, 1987).  Plaintiffs aver that the U.S. Postal Service is the principal and/or employer of Prado and its agent Hunt.  *Id.* ¶ V.  The complaint also alleges that as a result of the accident Olivia Lerma has lost the support, consortium and services of Richard Lerma.  *Id.* ¶ IX.

The plaintiffs submitted their administrative claim to the U.S. Postal Service on March 10, 1987, which was rejected on June 10th.  This action commenced in this court on July 30, 1987.

## II.  ANALYTICAL STANDARD:

### A.  *Burden*

■ A party suing the United States has the burden of showing an unequivocal expression of a waiver of sovereign immunity by the United States.  *Mitchell v. United States,* 787 F.2d 466, 467 (9th Cir.1986) (suit under the Federal Tort Claims Act), *cert. denied,* 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987).  *See also Duncan v. United States,* 562 F.Supp. 96, 99 (E.D.La. 1983) (noting under the Federal Tort Claims Act that "[t]he burden rests with the plaintiff to prove that under federal law, the negligent person was an employee of the United States").

### B.  *Exercise of Fact–Finding Function*

■ The determination of whether one is a government employee under the Federal Tort Claims Act is a question of federal law.  *Brucker v. United States,* 338 F.2d 427, 428 n. 2 (9th Cir.1964), *cert. denied,* 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965).  *See also Wood v. Standard Products Co., Inc.,* 671 F.2d 825, 829 (4th Cir. 1982).  However, resolving this issue by weighing the evidence "is an exercise of the fact-finding function."  *Brucker,* 338 F.2d at 428 n. 3 (citing Restatement (Second), Agency § 220 at comment c).  *See also United States v. Becker,* 378 F.2d 319, 321 (9th Cir.1967).

### C.  *Statutory Issue*

Under the Federal Tort Claims Act, the United States waives sovereign immunity for suits based upon the negligent or wrongful act or omission of a government employee.  28 U.S.C. § 1346(b).  The statute defines employee, in pertinent part, as any "person acting on behalf of a federal agency in an official capacity."  *Id.* § 2671.  This definition, however, is expressly qualified and "does not include any contractor with the United States."  *Id.*

The primary question presented by this action is whether Hunt is a federal "employee" as defined under the Federal Tort Claims Act, thereby establishing subject matter jurisdiction in this action, or is an independent "contractor," against whom the statute has not afforded an unequivocal and express waiver to sovereign immunity?  Additionally, the plaintiffs contend that subject matter jurisdiction exists because Prado, the driver of the Hunt tractor/trailer involved in the accident, is also a government employee.

### D.  *Legal Standard*

In addressing this issue, the Supreme Court has established a "control" test based on agency law.  In developing this standard, the Court has followed "the traditional distinction between employees of the principal and employees of an indepen-

**1296**

dent contractor with the principal," concluding that "the critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor," *Logue v. United States*, 412 U.S. 521, 527–28, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121, 128 (1973), and to supervise the "day-to-day operations." *United States v. Orleans*, 425 U.S. 807, 815, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390, 398 (1976). *See also Letnes v. United States*, 820 F.2d 1517, 1518 (9th Cir.1987) (noting if the government "had no authority to supervise and control the detailed daily operations of [the contractor's] employees, then there was no waiver of sovereign immunity and the district court lacked jurisdiction to decide the case"). *Accord Lewis v. United States*, 680 F.2d 1239, 1240 (9th Cir.1982) (same "control" test applied in determining whether Los Angeles branch of the Federal Reserve Bank of San Francisco is a federal agency).[1]

### III. DISCUSSION

■ The United States urges that this case should be controlled by two analogous cases where a contractor with the U.S. Postal Service was transporting mail and injured a third party in an accident. In both cases, the contractor, under contract to deliver or transport mail, was held to be an independent contractor and not an employee of the United States. *See Norton v. Murphy*, 661 F.2d 882 (10th Cir.1981) (where contract was originally under a Star Route contract but renewed under a new Transportation Services Contract, rural mail carriers held to be independent contractors); *Duncan v. United States*, 562 F.Supp. 96 (E.D.La.1983) (under a contract to transport mail between branch post offices in a van-type vehicle for three years, driver and employer held not to be "employees").

The plaintiffs argue that *Norton* and *Duncan* are factually distinguishable from the instant action and that Hunt is not an independent contractor but an employee or servant of the federal government by virtue of the control and supervision the government exercises over the day-to-day operations of Hunt.

Initially, the plaintiffs contend that the method and the manner of control exerted in the Hunt contract is greater than that in *Norton* and *Duncan*. According to the plaintiffs, the Hunt service contract: (1) specifies a schedule listing time and departure/arrival destinations which is monitored by a Tour Expediter for timely performance; (2) mandates equipment requirements, including the kind and size of the trailers and tractors and the necessary

---

**1.** The parties disagree on which agency principles should be applied in resolving the issue before the court. However, these arguments present a distinction without a difference since the authorities cited by the parties both rely on the same master-servant agency principles.

The plaintiffs contend that resolution of whether Hunt or Prado are employees of the defendant turns on the application of the definition of "servant" and "independent contractor" under Restatement (Second) of Agency, § 220, at 485–86 (1958). Reliance on section 220 is consistent with some Ninth Circuit authority. *See Brandes v. United States*, 783 F.2d 895, 897 (9th Cir.1986) (noting, where the court below applied § 220, that "[a]gency law is still proper law to use when determining that one is *either* an employee or an independent contractor for FTCA purposes") (emphasis in original); *Becker*, 378 F.2d at 321 (applying § 220); *Brucker*, 338 F.2d at 428 n. 2 (same).

On the otherhand, the defendant contends that Restatement (Second) of Agency, § 2, at 12 (1958) governs this case, since section 2 was one of the authorities followed by the Supreme

Court in one of the primary cases on this issue. *See Logue v. United States*, 412 U.S. 521, 527 n. 5, 93 S.Ct. 2215, 2219 n. 5, 37 L.Ed.2d 121, 127 n. 5 (1973).

Review of Restatement Section 2 and Section 220 reveals that both apply the same definition of master, servant and independent contractor. In fact, the comment to section 2 refers to the many factors under section 220 in distinguishing a servant from an independant contractor. *See* Restatement (Second) of Agency, § 2 Comments a & c, at 13, 14. Therefore, section 2 presents a brief introductory statement on servants and independant contractors, while section 220 enumerates several exemplary factors which may be considered on this question.

The proper test applied by this court is that set forth by the Supreme Court and recently applied by the Ninth Circuit, and already noted in the body of this order. *See Letnes*, 820 F.2d at 1518 (citing *United States v. Orleans* and quoting *Logue v. United States*). As noted, the "control" test is premised on the agency principles referenced in the Restatement (Second).

equipment to be utilized; (3) requires that the Hunt trailers are sealed for transportation by the U.S. Postal Service and prohibits Hunt drivers from breaking the seal; (4) enables the Tour Expediter to control the drivers' departure time after the load is sealed and directs the parking of the tractor/trailer at point of arrival in certain stalls; (5) specifies that Hunt trailers and tractors are stored and parked at the post office, when not in use, at pre-designated places, and (6) requires an FBI investigation to determine whether an employee-applicant selected by Hunt has a criminal record.

As in *Norton,* this court does not believe that this type of contractual specificity imposes the level of detailed control over the manner of transportation exemplified in a master-servant relation, but is only an exercise of "the right of the United States to insure that the proper results were obtained." *Norton,* 661 F.2d at 884. *See also Orleans,* 425 U.S. at 818, 96 S.Ct. at 1977, 48 L.Ed.2d at 400 (noting government regulations, concerning expenditure of federal funds, do not necessarily provide "power to supervise the daily operation" of an independent agency); *Letnes,* 820 F.2d at 1519 (noting "detailed regulations and inspections are no longer evidence of an employee relationship"); *Duncan,* 562 F.Supp. at 100 (noting government service requirements on postal carrier "did not amount to a control of the manner and method in which the actual delivery of the mail was made, or of his conduct along the route"). *See generally Kropp v. Douglas Aircraft Co.,* 329 F.Supp. 447, 469 (E.D.N.Y.1971) (noting other general contract restrictions where the United States has been held free of liability under the Federal Tort Claims Act). Additionally, the court notes that the Basic Surface Transportation Service Contract contains numerous other general provisions of the type to promote the achievement of the contract objective, but which do not demonstrate the requisite detailed control or supervision over Hunt's activities (e.g., no performance of operations under influence of alcohol or other substances; obligation to protect mail from loss, depredation or damage; minimum age

requirement for drivers; compliance with the Department of Transportation Motor Carriers' Safety Regulations, 49 C.F.R. §§ 390–97, and applicable State safety laws and regulations).

■ The plaintiffs also contend that the service contract exerts employer control through the specification of wage, benefit, and compensation provisions. However, these requirements are mandated by federal law, under the Services Contract Act of 1965, 41 U.S.C. § 351 *et seq.* This statute establishes labor standards, including minimum wage requirements, for contracts to furnish services with the United States that are in excess of $2,500, with some exceptions. *Id.* § 351. The fact that the contract specifies federal labor conditions or mandates certain labor regulations, does not transform an independent contractor into an employee of the government. The test is still whether the government exercises "control [over] the detailed physical performance of the contractor" and supervises "day-to-day operations." *Letnes,* 820 F.2d at 1518. Consequently, this court concludes that the application of the Services Contract Act of 1965 and other general regulatory provisions at issue here "are the sort of regulation-mandated contractual restrictions ... that are designed to secure federal objectives and that, despite their restrictive effect on the activities of the contracting party, do not convert an independent entrepreneur into an 'agent' of the federal government." *Ducey v. United States,* 713 F.2d 504, 516 (9th Cir.1983) (citing *Orleans,* 425 U.S. at 816, 96 S.Ct. at 1976, 48 L.Ed.2d at 399).

Plaintiffs assert that another significant distinction in their case is that *Norton* involved a Star Route Contract for delivery of mail to *rural* areas, whereas the agreement in the case at bar concerns mail transportation to specific destinations. In fact, *Norton* involved a Transportation Services Contract entered pursuant to the Postal Reorganization Act, which the court found was sufficiently similar to the Star Route Contract. Both contracts were held to involve independent contractors and not employees of the United States. *See Norton,*

661 F.2d at 884. The requisite level of detailed control or supervision to establish an employer-employee relation is not satisfied simply because the contract in issue designated starting and drop off points for mail transportation and may not have involved mail delivery in rural areas. Like the *Duncan* court, this court dismisses such a distinction as unmeaningful. *See Duncan*, 562 F.Supp. at 100 (rejecting distinction between contract for "delivery of mail in a rural area from a substation to rural boxes" from one concerning "delivery between branch post offices").

■ One factually distinguishing feature between the instant action and the two primary U.S. Postal Service authorities relied upon by the United States, however, is that the Hunt service contract does not permit the subcontracting of work to others, unlike the contracts at issue in *Norton* and *Duncan*. Additionally, the plaintiffs argue, Hunt is responsible for the ordinary expenses of operation and the U.S. Postal Service reimburses Hunt for fuel compensation. In light of the other factors already discussed, the court is not convinced that the presence of a prohibition against assignment, a requirement that Hunt must cover ordinary expenses, and a provision that Hunt be reimbursed for fuel compensation, are sufficient to establish a master-servant relationship. None of these factors rise to a level where Hunt's "day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815, 96 S.Ct. at 1976, 48 L.Ed.2d at 398. Notwithstanding that the question of control and supervision is often one involving degrees, *see Norton*, 661 F.2d at 884, in the instant action, the court concludes that a substantial level of control and supervision has not been established to indicate that Hunt is anything but an independent contractor.

Furthermore, a review of the record also establishes that Prado was hired as a part-time employee by the independent contractor Hunt as a driver of Hunt trucks, and therefore is not a government employee. More significantly, the plaintiffs have not established that the U.S. Postal Service controlled Prado's physical conduct in her performance of the contract in transporting the mail.

Other factors convince this court that neither Hunt nor Prado are "employees" of the United States, as that term is used under the Federal Tort Claims Act. It is noteworthy, for example, that: (1) Hunt, *not* the U.S. Postal Service, withheld social security taxes from Prado's check and maintained and prepared her time cards; (2) Hunt, *not* the U.S. Postal Service, owned the tractor/trailer trucks driven by Prado; (3) Larry Blaisure, Hunt's foreman and supervisor over Prado, gave Prado a road test in the truck and reviewed her employment application; (4) the routing of the mail transported between designated points was handled by Hunt, *not* the U.S. Postal Service; and (5) Hunt is required to provide its own liability insurance for the operation of its vehicles. These type of "day-to-day operations of the contractor's facilities" are left, as intended under the statute, "in the hands of the contractor," *Logue*, 412 U.S. at 529, 93 S.Ct. at 2220, 37 L.Ed.2d at 129, with the government role here limited to ensuring proper return of services under the contract.

The service contract, as applied in the case at bar, essentially involved the transportation of general mail from a San Francisco post office to a drop off point in Kettleman City, some two hundred sixty miles from the original point of departure. The sealed load from San Francisco would be deposited in Kettleman City and replaced with a similar load of mail from Los Angeles, which was transported on the return trip to San Francisco. Once Prado or other Hunt employees left the post office with the mail load, under the contract Hunt was left with the responsibility to transport and deliver the sealed load to the specified destination. The U.S. Postal Service did not exercise detailed control over these activities, which Hunt was contracted to perform.

It is true that the U.S. Postal Service exercised some control through its ability to dispatch the drivers, after the trailers had been loaded by U.S. Postal Service

employees, and, on their arrival, to direct them to specific stalls to back-in and unhook the load. However, this insubstantial control demonstrates that the defendant did not have the capacity to exercise detailed control while Hunt was transporting mail along the route. Therefore this ability to dispatch does not rise to the requisite detailed degree of control over Hunt's day-to-day activities articulated under the "control" test standard.

After reviewing *Norton* and *Duncan* and the arguments of counsel, the court finds these authorities persuasive in addressing the issue at bar and believes that the plaintiffs have been unable to establish any significant distinction between *Norton* and *Duncan* and the instant action. Additionally, and most significantly, in applying the "control" test articulated by the Supreme Court, this court concludes that Hunt is not a government employee because the U.S. Postal Service has not been shown "to control the detailed physical performance of the contractor," Hunt, and to supervise Hunt's "day-to-day operations." *Letnes*, 820 F.2d at 1518 (citing *Orleans*, 425 U.S. at 814–15, 96 S.Ct. at 48 L.Ed.2d at 398 (quoting *Logue*, 412 U.S. at 528, 93 S.Ct. at 2219, 37 L.Ed.2d at 128)).

Finally, Prado was the part-time employee of Hunt, an independent contractor, and cannot be a government employee. Significantly, the U.S. Postal Service has not been shown to control Prado's performance of the contract between Hunt and the U.S. Postal Service. Because neither Hunt nor Prado are "employees" of the United States, within the meaning of the Federal Tort Claims Act, this court does not have subject matter jurisdiction over this action.

## IV. CONCLUSION

The plaintiffs have not been able to meet their burden of showing that the United States has unequivocally waived sovereign immunity. Since neither Hunt nor Prado have been shown to be United States "employees," this court lacks jurisdiction to provide relief in this action.

For the above mentioned reasons, the defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), is HEREBY GRANTED.

IT IS SO ORDERED.