993 F.2d 884
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rosalinda RESENDEZ, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-15259.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 16, 1993.
Decided May 24, 1993.
 
 Appeal from the United States District Court for the Northern District of California, No. 91-CV-20227-SW; Spencer M. Williams, District Judge, Presiding.
 N.D.Cal.
 REVERSED AND REMANDED.
 
 
 1
 MEMORANDUM*
 
 
 2
 Rosalinda Resendez brought an action in U.S. District Court against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 and 1346(b). Resendez alleged that she slipped, fell, and sustained injuries because of the negligence of a janitor who cleaned the U.S. Post Office in King City, California. The district court dismissed Resendez's action for lack of federal subject matter jurisdiction. The district court held that the Post Office could not be held liable under the FTCA for the negligence of the janitor, because the janitor was not a federal employee. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291. We reverse.
 
 BACKGROUND
 
 3
 On December 23, 1988, Resendez entered the lobby of the U.S. Post Office in King City, California. At that time, the Post Office's janitor, Seferino Morales, was mopping the floor. There were no signs or warnings to alert Resendez to the fact that the floor was wet. Resendez slipped and fell, sustaining serious injuries.
 
 
 4
 Resendez filed a complaint against the United States under the FTCA, 28 U.S.C. § 2671 and 1346(b). The United States moved to dismiss Resendez's complaint under Fed.R.Civ.P. 12(b)(1). The United States argued that the district court lacked subject matter jurisdiction because Morales was not an employee of the United States under the FTCA. The United States contended that Morales was instead an independent contractor. The district court held an evidentiary hearing on this issue. At the hearing, the district court heard testimony from Morales and Michael Sparrow, the Postmaster of King City, California. Their testimony and written declarations revealed the following facts.
 
 
 5
 Morales worked about 20 hours per week for the Post Office. Morales also worked about 40 hours per week at a local school as a maintenance worker. The Post Office did not provide Morales's health or life insurance. The Post Office did not give Morales paid vacations, holidays, or sick days. The Post Office did not withhold federal or state income taxes or Social Security deductions from Morales's paychecks. The Post Office made no unemployment contributions for Morales.
 
 
 6
 Morales worked for the Post Office continuously for 5 years. The Post Office did not require Morales to work at any specific time of day. He did not, however, have a key to the Post Office and therefore had to arrive at the Post Office while a postal employee was present. Morales punched a time clock so that Sparrow could determine the number of hours he worked.
 
 
 7
 When necessary, Sparrow gave Morales special instructions as to how and where to clean the Post Office. For example, if the Post Office was to be inspected, Sparrow would ask Morales to do a particularly good job cleaning. If Morales was working in an area that was crowded, Sparrow would ask Morales to move and clean somewhere else.
 
 
 8
 Sparrow testified that it was within the scope of his authority to comment on Morales's performance. For example, if Morales overlooked something, Sparrow could remind him that he missed something that needed to be cleaned. Sparrow also had the authority to reward Morales. In fact, Sparrow gave him a raise (from $7.00 to $8.00 per hour) for his good work.
 
 
 9
 If Morales was unable to work at the Post Office on a particular day, he consulted Sparrow. Upon receiving Sparrow's permission, Morales would send two women to clean the Post Office in his place. The Post Office paid Morales, and Morales then paid his replacements.
 
 
 10
 After hearing all the evidence, the district court determined that Morales was an independent contractor, not an employee of the United States. The district court, therefore, concluded that the United States could not be held liable for Morales's negligence under the FTCA. The district court consequently dismissed Resendez's complaint for lack of subject matter jurisdiction. Resendez timely appeals.
 
 DISCUSSION
 I. Standard of Review
 
 11
 We review the existence of subject matter jurisdiction de novo. Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc., 970 F.2d 552, 554 (9th Cir.1992) (citing Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990)). We accept the district court's factual findings on jurisdictional issues unless the findings are clearly erroneous. Id.
 
 II. Analysis Under the FTCA
 
 12
 Under the FTCA, the United States is liable for the negligent or wrongful acts or omissions of its employees, who have acted within the scope of their employment. 28 U.S.C. § 1346(b). The FTCA defines an "employee of the government" as a person "acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671 (emphasis added). The FTCA definition of "federal agency" specifically excludes "any contractor with the United States." Id. Consequently, courts have consistently held that the United States is not liable for the torts of its independent contractors. See, e.g., United States v. Orleans, 425 U.S. 807 (1976).
 
 
 13
 The issue presented by this appeal is whether the district court erred by holding that Morales was an independent contractor and not an employee of the United States under the FTCA.
 
 
 14
 We look to the common law of tort and agency to determine whether Morales was an employee or a contractor. See Logue v. United States, 412 U.S. 521, 528 (1973). The common-law relationship of master-servant is instructive in this regard. See id. at 527 n. 5 (citing Restatement (Second) of Agency § 2 (1958)). Accordingly, "the presence of those characteristics which traditionally determine the existence of the common-law relationship of master and servant will generally determine whether the wrongdoer is an employee of the Government for whose torts the United States must respond." 1 Lester S. Jayson, Handling of Federal Tort Claims § 203.01, at 8-58 (1987) (citing the Restatement (Second) of Agency § 220(1) (1958)). Those characteristics include the following:
 
 
 15
 the extent of control which the master may exercise over the details of the work; whether or not the one employed is engaged in a distinct occupation or business; the nature of that occupation, with reference to whether the work is usually done under the direction of the of the employer or by a specialist without supervision; the skill required in the particular occupation; whether the employer or the workman supplies the tools, equipment, and the place of work for the person doing the work; the length of time for which the person is employed; the method of payment, that is, whether by time or by the job; whether or not the parties believe they are creating the relation of master and servant, etc.
 
 
 16
 1 Lester Jayson, Handling of Federal Tort Claims § 203.01, 8-58 (1987) (citing Restatement (Second) of Agency § 220(2) (1958)). We apply these characteristics to the facts of this case and hold that Morales was an employee of the United States under the FTCA.
 
 
 17
 Postmaster Sparrow was Morales's supervisor. Sparrow told Morales how and where to clean. When necessary, Sparrow corrected Morales if he overlooked something that needed cleaning. Sparrow had the authority to let Morales know if he was doing a good or bad job and the authority to adjust his salary accordingly. Sparrow kept track of Morales's hours by reviewing his punch card. If Morales could not go to work, he would consult Sparrow. Morales obtained Sparrow's approval before providing replacements during his absences. Essentially, Sparrow supervised Morales as much as one needs to supervise a janitor who does the same, unskilled job, six days per week, for five years.
 
 
 18
 Morales did not own and operate a separate janitorial business. In fact, Morales only used cleaning materials supplied by the Post Office. There is no evidence that Morales carried his own liability insurance. Cf. Norton v. Murphy, 661 F.2d 882 (10th Cir.1981) (one factor the court considered for independent contractor determination was that mail carrier had his own liability insurance). There is also no evidence that Morales entered into a written contract with the Post Office for a specific term or to perform a specific project. Such contracts are common in other cases where individuals were held to be "independent contractors." See, e.g., Letnes v. United States, 820 F.2d 1517 (9th Cir.1987); Ducey v. United States, 713 F.2d 504 (9th Cir.1983). In contrast, Morales was hired as the Post Office's janitor for an indefinite period, which lasted continuously for over five years. Moreover, Morales was paid hourly, rather than by task. Finally, Morales worked solely on the Post Office's premises while performing his duties. Cf. Lerma v. United States, 716 F.Supp. 1294 (N.D.Cal.1988), aff'd, 876 F.2d 897 (9th Cir.1989) (part-time driver of transportation corporation who contracted with U.S. Postal Service to deliver mail was not a federal employee under FTCA).
 
 
 19
 The district court's conclusion that Morales was an independent contractor of the U.S. Post Office was based on the fact that Sparrow did not routinely give Morales specific instructions. See Logue, 412 U.S. at 527-28; Orleans, 425 U.S. at 815. In Logue, the Supreme Court explained that the distinction between a servant relationship and that of an independent contractor "turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." Logue, 412 U.S. at 527 (emphasis added) (citations omitted). If the United States has the authority to control the detailed performance of the individual's day-to-day operations, the individual is a federal employee. See id. at 527-28; Orleans, 425 U.S. at 815. Postmaster Sparrow clearly had the authority to control and supervise Morales's day-to-day activities. In fact, Sparrow exercised this authority whenever necessary. Morales was, therefore, an employee of the U.S. Post Office at King City.
 
 III. Conclusion
 
 20
 Because Morales was an employee of the U.S. Post Office, the United States could be held liable for his negligence under the FTCA. Resendez has, therefore, established federal subject matter jurisdiction for her action against the United States.
 
 REVERSED and REMANDED.[1]
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because we reverse the district court's dismissal for lack of subject matter jurisdiction, we do not discuss the nondelegable duty doctrine, which Resendez raises for the first time on appeal